**UNITED STATES of America, Appellee,**

v.

**Eric WALTON, Appellant.**

No. 78–5126.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 9, 1979.

Decided July 31, 1979.

Arthur M. Recht and Terence M. Gurley, Wheeling, W.Va. (Schrader, Stamp & Recht, Wheeling, W.Va., on brief), for appellant.

William A. Kolibash, Asst. U. S. Atty., Wheeling, W.Va. (Stephen G. Jory, U. S. Atty., Elkins, W.Va., on brief), for appellee.

Before RUSSELL and WIDENER, Circuit Judges, and HOFFMAN,* District Judge.

* Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

WALTER E. HOFFMAN, Senior District Judge:

Eric Walton, the appellant, was named in five counts of a ten-count indictment returned November 7, 1977, against seven defendants. Walton was named in Count 1, conspiracy to distribute a controlled substance; Counts IV, VI, and VIII, possession with intent to distribute a controlled substance, and Count IX, distribution of a controlled substance. The appellant, who offered no evidence in his defense, was the sole defendant in his trial, as the remaining defendants were disposed of under Rule 20, F.R.Cr.P., in other jurisdictions. Following a four-day trial, a jury returned verdicts of guilty on Count VIII, possession with intent to distribute fifty pounds of marijuana, and Count IX, actual distribution of ten pounds of marijuana. The jury acquitted Walton on the remaining counts. Walton appeals from his convictions.

The theory of the government's case was based in large measure on the testimony of one Karen Pappas, a former girlfriend of Walton's who had lived with him at one time. Pappas testified that Walton was a major drug dealer in the Ohio Valley area around Wheeling, West Virginia. She related a series of events in which she flew to the Southwestern United States and Mexico, purportedly at Walton's bidding, in order to obtain sources of marijuana to supply Walton's enterprise. She also testified as to several instances in which marijuana deals were transacted in the Wheeling area, either at Walton's direction or by his actual participation. Walton's defense consisted of an attempt to establish, through cross examination of government witnesses, that Pappas was a leading figure in a conspiracy in which Walton played no part, as suggested by the central role she played in her own testimony. Pappas was also cast as a rejected lover who was trying to get even while at the same time trying to save her own self.

The jury must have entertained reasonable doubt concerning a substantial portion of Pappas' testimony, since it acquitted Walton on the conspiracy count and on two of the other counts. Under Count VIII, Walton was convicted of the possession with intent to distribute fifty pounds of marijuana. Pappas testified that she and Walton went to the residence of one Rick Albus to weigh and package the marijuana. Albus corroborated her testimony at trial. Under Count IX, Walton was convicted of selling ten pounds of marijuana to a Fred Westfall. Westfall was named in the indictment but had not been apprehended at the times that Walton and the other co-conspirators went to trial. The evidence would tend to support an observation that the jury elected to convict Walton on two counts for which there was evidence of direct participation by Walton, and to acquit him on those counts which involved constructive participation through acts of third parties.

Appellant cites some seventeen errors on appeal. Many of the alleged errors concern the denials of motions for continuances prior to trial. Several relate to the fact that at some time prior to trial a large quantity of marijuana disappeared from the evidence room where it had been stored by *state* authorities. Still others concern the government's chief witness, Karen Pappas. This court has examined the record thoroughly and finds the appellant's assignments of error to be without merit. We find it unnecessary to discuss each issue in detail, and therefore confine our discussion primarily to those issues which involve the marijuana introduced into evidence and those issues relating to Pappas.

I

Walton's arrest on the drug charges involved herein resulted from an altercation which he had with Pappas at her apartment. The police were called by neighbors, and marijuana was discovered strewn about the apartment. Pappas, hospitalized as a result of injuries she received during the altercation, furnished information to the authorities describing Walton's activities. She testified that this marijuana was not in her apartment when she left. Approximately 165 pounds of marijuana was recovered from the trunk of her car.

The government constructed a chain of custody from the time this marijuana was first seized and transported to a laboratory, until the time it was tested by a state chemist and determined to be marijuana. The marijuana was available for chemical testing on behalf of the defense about eight weeks prior to trial. One week prior to trial it was discovered that approximately thirty-six (36) pounds of the marijuana had disappeared.[1] Appellant contends that this impugns the credibility of the evidence introduced at trial, and argues that it was error for the court to refuse to grant a continuance to allow him to chemically test the remaining marijuana.[2]

■ The court, quite properly, denied appellant's motion for a continuance to test the marijuana and admitted the marijuana into evidence at trial. The court held that the alleged tampering with the evidence went to the weight of the evidence and did not affect its admissibility. The court noted that the officers who originally seized the marijuana from the trunk of Pappas' car identified the material as marijuana, the laboratory policemen identified the material in court by markings they had placed on the marijuana "bricks" prior to testing, and similar packages of marijuana were found by the policemen who responded to the altercation between Walton and Pappas at her apartment. The material seized from the trunk of the car tested positively as marijuana prior to any alleged tampering. The marijuana introduced at trial was

*prima facie* part of that same marijuana. Appellant was dilatory in not testing early in January.[3] We find no error.

## II

We are most concerned with the possible prejudice which might occur to a defendant when a government witness is placed in protective custody and no arrangements are made to enable defense counsel to have access to that witness. In the instant case the chief government witness, Karen Pappas, was placed in a witness security program, so that her whereabouts were unknown to the appellant. In pretrial motions appellant asked the court to require the government to produce the "informant" and to allow the defense to interview said informant. Although the motions were denied in the omnibus hearing, appellant contends it was understood that, in a spirit of cooperation and professional responsibility among counsel, the government would provide the defendant with an opportunity to interview Pappas. Several days later the assistant United States Attorney denied appellant's request for defense counsel to interview the witness. Appellant again moved the court for an opportunity to interview Pappas, which motion was denied.

■ A witness is not the exclusive property of either the government or a defendant; a defendant is entitled to have access to any prospective witness, although in the end the witness may refuse to be

1. The disappearance of the marijuana created a certain amount of publicity preceding trial. Given the publicity and other circumstances surrounding the trial, it was within the discretion of the trial court to sequester the jury during trial, as occurred in this case.

2. Appellant also contends that a continuance should have been granted because the omnibus hearing for pre-trial motions was not held until seventeen days before trial, leaving the defense with insufficient time to prepare for trial. Appellant was arraigned three-and-one-half months prior to trial on an extensive indictment which related the charges against Walton in great detail. A bill of particulars was totally unnecessary in this case and was properly refused by the court. Appellant should not have found it necessary to wait until after the omni-

bus hearing had been held to begin preparation for trial. The initial omnibus hearing was scheduled for January 12, 1978, with trial scheduled for January 30. Both dates were continued to February 10 and February 27, respectively. In any event, the counts on which appellant was convicted were simple and straightforward.

3. Appellant's argument that marijuana is misclassified as a Schedule I controlled substance pursuant to 21 U.S.C. § 812(b)(1)(B), is without merit. There is no evidence that fingerprint analyses, copies of which were allegedly denied to appellant, were ever run on the marijuana samples. The court below would not have been bound by the purported promise of a *state* prosecutor that the marijuana would not be used against Walton in court.

interviewed. *United States v. Brown*, 555 F.2d 407, 425 (5th Cir. 1977); *United States v. Scott*, 518 F.2d 261, 268 (6th Cir. 1975); *United States v. Murray*, 492 F.2d 178, 194 (9th Cir. 1973); *United States v. Long*, 449 F.2d 288, 295 (8th Cir. 1971). Instances will arise in which the government will find it necessary to place witnesses in protective custody. In *United States v. Murray, supra*, the court went so far as to take judicial notice of the personal danger a narcotics conspirator risks when he or she becomes a government informer. Under such circumstances, it becomes the duty of the trial court to ensure that counsel for defense has access to the secluded witness under controlled arrangements. The better procedure is to allow the defense counsel to hear directly from the witness whether he would be willing to talk to the defense attorney, either alone or in the presence of his attorney. *United States v. Long, supra*. Under extreme circumstances a court might consider requiring the defense attorneys to contact a deputy clerk of the court in order to attempt to arrange interviews. *See, United States v. Brown, supra*. The court may delay access to a witness in protective custody until shortly before trial, when such delay is warranted by the circumstances. *United States v. Murray, supra*.

■ While we find that it was error for the appellant to be deprived of access to the witness Pappas,[4] we are not convinced that Walton has been prejudiced. In late December, 1977, defense counsel was allowed access to a government file which inadvertently contained a third-person account of an interview of Karen Pappas conducted by a special agent of the Drug Enforcement Administration.[5] Defense counsel was well prepared to cross-examine Pappas at trial, as evidenced by the 107 pages of cross-examination contained in the record. *See, United States v. Long, supra*. Jencks Act

material was turned over to defense counsel immediately following the government's direct examination of Pappas, and counsel was able to begin cross-examination without requesting a recess. *United States v. Scott, supra*. We would not be inclined to make a finding of harmless error were it not so obvious that the appellant was fully apprised of the details of Pappas' testimony. *See, United States v. Jones*, 542 F.2d 186, 208–11 (4th Cir. 1976).

■ Appellant's other assignments of error concerning the witness Pappas are without merit. The decision to disclose grand jury minutes prior to trial is committed to the discretion of the trial judge. *Bast v. United States*, 542 F.2d 893, 895 (4th Cir. 1976); *United States v. McGowan*, 423 F.2d 413, 418 (4th Cir. 1970). Transcripts of Pappas' testimony before the grand jury were provided to appellant at the time other Jencks Act material was turned over to the defense. Medical records concerning a psychological disorder which Pappas was alleged to have suffered were examined by the court at trial *in camera*. The records did not support the allegation. Appellant proffered testimony alleging that Pappas had committed prior criminal acts. No arrest resulted from these alleged acts. Under Rule 608(b) of the Federal Rule of Evidence, specific instances of conduct of a witness, other than criminal convictions, may not be proved by extrinsic evidence. The district court properly declined to conduct a trial within a trial, and refused to admit the evidence. Conversely, it was not error for Pappas to testify to prior criminal acts on the part of the appellant, since that part of her testimony detailed the nature of Walton's criminal enterprise. This evidence was admissable under Rule 404(b) of the Federal Rules of Evidence as proof of intent, preparation, plan and knowledge on the part of the appellant. Appellant's de-

---

**4.** Appellant also moved the court below to produce the co-conspirators named in the indictment for an interview. The co-conspirators had not been placed in protective custody or otherwise secluded by the government. The court had no authority to compel co-defendants to submit to an interview.

**5.** The "late December" date is taken from the concession of appellant's counsel at oral argument.

fense was based in large part on his contentions that Pappas, rather than the appellant, was the real perpetrator of the criminal acts, thereby placing intent squarely in issue.

Appellant was fined $15,000 and sentenced to five years imprisonment on each of the two counts on which he was convicted, the sentences to run consecutively, together with a special parole term of four years. It was within the discretion of the trial court to sentence the appellant to the maximum penalties under statute. The nature of the sentences received by Walton's co-defendants following pleas of guilty in other jurisdictions is irrelevant to the court which sentenced Walton. The so-called newly discovered evidence was inconsequential and would have had no probative effect on the counts under which appellant was convicted.

Accordingly, the appellant's conviction under two counts is affirmed.

AFFIRMED.