802 F.2d 451
 21 Fed. R. Evid. Serv. 1318
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Appellee,
v.
Gene Douglas CARNES, Appellant.
 No. 86-5015.
 United States Court of Appeals,
Fourth Circuit.
 Submitted Aug. 27, 1986.
Decided Oct. 1, 1986.
 
 Wayne King, on brief, for appellant.
 David A. Faber, United States Attorney, Mary S. Feinberg, Assistant United States Attorney, on brief, for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before RUSSELL, ERVIN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant-appellant Gene Douglas Carnes appeals his conviction of one count of tax fraud conspiracy (18 U.S.C. Sec. 371), two counts of filing false tax returns (26 U.S.C. Sec. 7206(1) ), and three counts of aiding and assisting preparation and presentation of false tax returns (26 U.S.C. Sec. 7206(2) ). We affirm.
 
 
 2
 A 1985 indictment charged in Count One that Carnes and Jerry W. Smith had conspired to defraud the United States by aiding and assisting in the preparation and presentation of false corporate tax returns of Captex, Inc., for the fiscal years 1978 through 1980. Carnes was charged individually in Counts Two and Four with filing false individual income tax returns for the calendar years 1979 and 1980. Carnes was also charged, in Counts Five, Six and Seven, with aiding and assisting Captex in filing false corporate tax returns for the fiscal years 1978, 1979, and 1980. Smith, in addition to the conspiracy violation, was also charged in Count Three with filing a false individual income tax return for the calendar year 1979.
 
 
 3
 Smith, pursuant to an agreement with the prosecution, pleaded guilty to the conspiracy charge and the false tax return charge. He was the prosecution's principal witness at appel lant's trial. According to Smith's testimony, he and Carnes were insurance agents in the Charleston, West Virginia, office of Connecticut General Life Insurance Company. in 1974, Carnes and Smith formed Captex, Inc., a West Virginia corporation, as their own independent insurance agency. Captex was not immediately profitable.
 
 
 4
 To acquire needed monies, Carnes and Smith devised a scheme to divert insurance premiums paid by their clients into their own hands. They did this by collecting premiums and fail ing to forward them to the appropriate insurance companies. Carnes established a checking account in the name of "Connecticut General Life Insurance Co. of West Virginia." When Captex received a client's premium payment, it deposited the payment in a Captex account. If Carnes and Smith decided to keep that premium, they would not forward it to the actual Connecticut General Life Insurance Company in Connecticut. Instead, the check would be deposited in the unauthorized "Connecticut General" account. Carnes and Smith then divided the diverted monies.
 
 
 5
 In a similar scheme, Carnes sold bogus investment "Certificates of Guarantee," and then Carnes and Smith divided the proceeds of the sales. Carnes sold these certificates to individuals, telling them that Connecticut General Life Insurance Company had issued their respective certificates. He also told investors that Connecticut General would invest the monies in Swiss banks and that interest income would not be reportable to the Internal Revenue Service. In fact, Carnes had himself devised the certificates and their format. A local print shop printed them. The certificates bore the signature of "Wilhelm Schmidt," a fictitious person associated with the "Swiss Bank and Trust Company, Ltd.," a fictitious company that allegedly received the money. Smith signed the name of "Wilhelm Schmidt." Smith testified that Carnes signed the name of "Wayne L. King." The actual Wayne L. King, an employee of the actual Connecticut General Life Insurance Company, testified that he did not sign any certificates nor had he authorized anyone to sign his name.
 
 
 6
 An Internal Revenue Service agent testified that Captex underreported its income for the fiscal years 1978, 1979, and 1980 because gross receipts did not reflect diverted premiums in 1978 and diverted premiums and proceeds from certificate sales in 1979 and 1980. Smith testified that Carnes maintained the books and records of Captex and prepared and filed its corporate income tax. The revenue agent also testified that Carnes understated his adjusted gross income on his individual income tax return for the years 1979 and 1980.
 
 
 7
 Carnes challenges the validity of his conviction on numerous grounds. He argues that the district court erred in a series of evidentiary rulings: first, by refusing to allow direct testimony and the entry of documents concerning Smith's alleged excess valuation of two pieces of property for insurance purposes; second, by refusing to admit evidence of a tax lien filed by the state of West virginia against Smith; third, by ruling that the testimony of a Michael Dupay concerning an alleged trip by Smith to the Grand Cayman Islands was inadmissible hearsay; and, fourth, by excluding as irrelevant the testimony of a Judge John Hey concerning Carnes' reference to Hey of another individual seeking preparation of.incorporation papers, and by excluding testimony of a William Morrison concerning Smith's failure to forward payments to a Bud Young. Carnes also alleges that the court erred by failing to rule on a defense motion in limine which sought to prevent impeachment use of Carnes' prior convictions. Also challenged is the district court's refusal to bar the testimony of a prosecution expert witness, and its refusal to strike one potential juror for cause.
 
 
 8
 The first claim of evidentiary error concerns two separate rulings by the district court. For the express purpose of impeaching Smith's credibility during cross-examination, defense counsel attempted to introduce into evidence a document showing that a piece of property owned by Smith was insured for a greater sum than its appraised value. Counsel also offered to present direct testimony of a witness for the same purpose. Defense counsel offered to make a similar showing concerning another piece of property. The court sustained the prosecution's objections. Under Federal Rule of Evidence 608(b), specific instances of misconduct of a witness, other than a criminal conviction, may not be proved by extrinsic evidence. See United States v. Walton, 602 F.2d 1176, 1180 (4th Cir. 1979). Here, as in that case, the district court properly declined to conduct a trial within a trial and refused to admit the evidence.[1]
 
 
 9
 The second claim of evidentiary error also arises from the district court's refusal to admit extrinsic evidence of the witness' past conduct, specifically the state tax lien of $52.11 for the year 1974. Again, Fed. R. Evid. 608(b) barred its admission.
 
 
 10
 The district court is claimed to have made its third evidentiary error when it sustained the prosecution's objection to the defense's attempt to elicit statements from a Michael Dupay that Smith had told Dupay that Smith had been to the Grand Cayman Islands. The prosecution objected to the statement as hearsay and defense counsel failed to show that the statement fell under an exception to the bar on hearsay. The statement was properly excluded.[2]
 
 
 11
 The fourth claim of evidentiary error is that the district court improperly excluded the testimony of a Judge John Hey and a William Morrison. The defense sought to offer testimony by Judge Hey that Carnes recommended that an individual consult Hey, apparently at that time a practicing attorney, concerning the preparation of articles of incorporation for a prospective corporation. The purpose of the testimony was to show that Carnes "did not take these things (preparation of corporate papers] upon himself." The district court excluded the testimony as "utterly irrelevant." The determination of relevance, like that of prejudice, is left to the sound discretion of the district court. See I J. Weinstein & M. Berger, Weinstein's Evidence paragraphs 401 , 403 (1985). Here, even if the testimony had some relevance, it might easily have confused the jury and wasted time. There was no abuse of discretion.
 
 
 12
 The defense sought to call William Morrison to testify that he had made payments to Smith but that Smith had not properly forwarded them to another individual. Morrison therefore had to make the same payments again. Fed. R. Evid. 608(b) again barred this testimony.[3]
 
 
 13
 Carnes' next claim of error is that the district court failed to rule on a defense motion in limine seeking to prevent impeachment use of his prior convictions. Carnes never testified. Because he failed to testify, he has not preserved a claim under Fed. R. Evid. 609(a). Luce v. United States, --- U.S.
 
 
 14
 Carnes contends that the prosecution's last-minute production of an expert handwriting witness prejudiced him. Specifically, he contends that if defense counsel had learned of the expert witness' testimony earlier, counsel might have employed a "possible (sic] different approach to the examination of the witnesses presented prior to the testimony of Richard Theis (the expert]." The prosecution first notified Carnes of its in tent to rely on a report from the expert witness on Thursday, October 24, 1985, the third day of the trial. At the same time it provided counsel with a copy of the report. On Monday, October 28, when the prosecution was preparing to call Theis to the stand, the defense objected. The district court offered defense counsel a continuance and deferred calling the witness that day.
 
 
 15
 On Thursday, October 29, the district court offered to grant the defense up to two weeks to obtain an expert witness. Defense counsel declined the offer, and the expert presented his handwriting analysis.
 
 
 16
 Fed. R. Crim. P. 16(a)(1)(D) requires the government upon a defendant's request to
 
 
 17
 permit the defendant to inspect and copy ... any results or reports ... of scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.
 
 
 18
 Under Fed. R. Crim. P. 16(d)(2), the district courts are given authority to choose a remedy for the violation of a discovery order. The district court's decision is reviewable only to de termine if the court abused its discretion, and its decision should be reversed only where it is shown to be prejudicial to the substantial rights of the defendant. United States v. Kubiak, 704 F.2d 1545 (11th Cir.), cert. denied, 464 U.S. 852 (1983).
 
 
 19
 Here, the district court did not abuse its discretion. Fairness does require that adequate notice be given the defense in order that it may check the findings and conclusions of the prosecution's expert witness. United States v. Kelly, 420 F.2d 26, 29 (2d Cir. 1969). Here, however, Carnes was granted the opportunity for a continuance and declined it. There was there fore no error in admitting the testimony. See United States v. Joyce, 499 F.2d 9, 22 (7th Cir.), cert. denied, 419 U.S. 1031 (1974).[4] Moreover, Carnes' contention that cross-examination of other witnesses might have been different is wholly speculative and therefore inadequate to establish prejudice. Cf. United States v. Hernandez, 608 F.2d 741, 746 (9th Ci-r. 1979) (no abuse of discretion in denial of continuance where no showing made of additional information to be disclosed if continuance granted).[5]
 
 
 20
 Carnes' final contention is that the district court erred in failing to strike a potential juror, Marjorie Mullins, for cause. At trial, Carnes moved to strike Mullins for cause because she had been employed as a file clerk by the state police and the Federal Bureau of Investigation, and because she remembered a fire and burglary in which Carnes had some involvement. She did not, however, remember Carnes or his involvement.
 
 
 21
 It is well settled that refusal to strike a potential juror for cause is within the discretion of the trial judge. Dennis v. United States, 339 U.S. 162, 168 (1950). Such a decision will not be disturbed unless the prejudice of a juror is "manifest." United States v. Jones, 608 F.2d 1004, 1008 (4th Cir. 1979), cert. denied, 444 U.S. 1086 (1980). Our review of the record discloses no manifest prejudice on the part of Mullins. We conclude that the trial court did not abuse its discretion in refusing to strike the juror.
 
 
 22
 Accordingly, we grant appellee's motion and dispense with oral argument because it would not aid the decisional process. The judgment of the district court is affirmed.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Although counsel failed to clarify this contention either before the district court or this Court, Carnes may be contending that the district court improperly limited cross-examination of Smith concerning the valuation of the properties. Analysis of this contention requires review of Smith's testimony. During crossexamination of Smith, defense counsel elicited an admission from Smith that he had failed to file individual tax returns for the years 1982 through 1984. Smith also testified that he forged the signature of a purported bank official. In view of this damaging exploration of the witness' credibility, appellant was not deprived of his right of confrontation by the district court's discretionary curtailment of crossexamination. See United States v. Salovitz, 701 F.2d 17, 21 (2d Cir.1983)
 Further, we note that the district court stated that the sequence of real estate transactions about which defense counsel sought to cross-examine Smith was confusing. While the right of confrontation and cross-examination is essential to a fair trial, the court retains discretion to limit needless or confusing inquiry into collateral matters. See Davis v. united States, 415 U.S. 308, 316 (1974); United States v. Cole, 622 F.2d 96, 100 (4th Cir.), cert. denied, 449 U.S. 956 (1980).
 
 
 [2]
 On appeal, Carnes contends that the district court "did not allow questions of" Harold Spangler, Jr. No citation to the transcript was made, and the record does not show that the district court limited defense questioning of Spangler
 
 
 [3]
 Assuming defense counsel sought to cross-examine Smith concerning this transaction, the district court properly limited the scope of cross-examination. See note 1, supra
 
 
 [4]
 The district court stated that the government's late production of the expert witness' report was due in large measure to the manner in which the case developed. Carnes does not contend that the prosecution acted in bad faith
 
 
 [5]
 Carnes also argues that the prosecution had a duty to conduct an examination of the signatures found on the "Certificates of Guarantee" because such an examination, if made, could have been exculpatory. This contention is frivolous