**UNITED STATES of America,
Petitioner,**

v.

**Honorable Jim R. CARRIGAN,
Respondent,**

**and**

**Peter Kiewit Sons' Company, Harold L.
Cherry, and Richard L. McVaney,
Parties in Interest-Respondents.**

**No. 86–2152.**

United States Court of Appeals,
Tenth Circuit.

Nov. 7, 1986.

William P. Sellers, Peter B. Clark, and Barbara N. Bandfield, Trial Attys., U.S. Dept. of Justice, Washington, D.C., for petitioner.

Daniel J. Sears, Denver, Colo., for respondent.

Harold A. Haddon, Haddon, Morgan & Foreman, Denver, Colo., for parties in interest-respondents.

Before LOGAN, SEYMOUR and MOORE, Circuit Judges.

LOGAN, Circuit Judge.

This is a petition for a writ of mandamus seeking vacation of a pretrial order directing that defendants in a criminal action be allowed to depose particular prospective government witnesses. In the underlying criminal action, a mail fraud case brought against defendants Peter Kiewit Sons' Co., Harold L. Cherry, and Richard L. McVaney in connection with a federally-funded bridge construction project, several government witnesses refused defense requests to interview them. Alleging that the witnesses' refusal was the result of government prosecutors' interference with defense counsel access to the witnesses, defendants filed a motion requesting the district court to advise two prospective witnesses, Floyd Jett and Donald Steele, that it would be appropriate for them to submit to defense interviews.

The court held a hearing during which it heard testimony of prospective government witnesses Jett and Steele; another prospective government witness, Katherine Williams; the witnesses' attorney, Neil Lee Thompson; and defendants' investigator, R. Jon Foster. The district court then ordered that defendants be permitted to take the depositions of Jett and Steele in the presence of their attorney and the government's counsel. The court based its order on findings of fact that the prosecutors' statements, advice and conduct discouraged the witnesses from communicating with the defense, "at least strongly implied that the witnesses should decline the requested defense interviews," and "substantially chilled these witnesses' previously expressed willingness to discuss the facts with the defense." Memorandum and Order at 10, 11, Hearing Transcript 7/22/86 at II, 3. Accordingly, the court concluded that the order was necessary, pursuant to Fed.R.Crim.P. 16(d) and the "court's inherent power to enforce fair procedures to assure fair trial," to "reopen the access to these witnesses that existed before the government's actions." Memorandum and Order at 12.

The government petitioned this court to issue a writ of mandamus vacating the district court's order on the grounds that the order exceeded the court's authority under Fed.R.Crim.P. 15, and violated the witnesses' rights to choose not to speak with defense counsel. Although the judge's Memorandum and Order at one point mentions ordering the government to make the witnesses available, Memorandum and Order at 3, the order appears to have been directed at the witnesses themselves, *id.* at 12; Hearing Transcript 7/22/86 at II, 3-4. The witnesses have not petitioned this court or otherwise objected on the record to the district court's order.[1]

---

1. Counsel for the respondent here and for the defendants in the underlying criminal action suggest that because the witnesses have not objected to the court's order, the government lacks standing to seek mandamus. It is true that the government cannot claim standing here solely as the representative of third parties' rights.

Such representation is not permitted unless there is some obstacle to the third persons' assertion of their own rights. *Singleton v. Wulff,* 428 U.S. 106, 116, 96 S.Ct. 2868, 2875, 49 L.Ed.2d 826 (1976). In this case, no such obstacle is apparent. The witnesses may, if they wish, refuse to submit to depositions and seek

Mandamus is a drastic and extraordinary remedy, used in federal courts only " 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' ... Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy." *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (quoting *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967)). To ensure that the writ will issue only in extraordinary circumstances, the Supreme Court has required that the petitioner show a clear and indisputable right to relief. *Allied Chemical,* 449 U.S. at 35. We have accordingly limited issuance of mandamus writs to "those exceptional cases where the inferior court acted wholly without jurisdiction or so clearly abused its discretion as to constitute usurpation of power." *In re Dalton,* 733 F.2d 710, 716 (10th Cir.1984), *cert. dismissed,* 469 U.S. 1185, 105 S.Ct. 947, 83 L.Ed.2d 959 (1985). Therefore, to grant the government's petition in the case before us here, we must find either (1) that the district court acted wholly without jurisdiction, or (2) that the district court so clearly abused its discretion as to constitute usurpation of power.

I

Does a district court have authority in a criminal case, in any circumstances, to order pretrial depositions of the prosecution's witnesses by a defendant? In searching for this power we must consider these sources: Federal Rules of Criminal Procedure 15(a) and 16(d), and the court's inherent power to control the conduct of its trials and to impose sanctions in connection with that supervisory power.

Fed.R.Crim.P. 15 explicitly treats depositions. Under subsection (a) depositions of "a prospective witness of a party" may be taken when in the exceptional circumstances of the case such taking is in the interest of justice. The advisory and legislative committee notes make clear that Rule 15 does not authorize a party to take discovery depositions of the adversary party's witnesses. Fed.R.Crim.P. 15, Notes of the Advisory Committee on 1974 Amendment; Notes of Committee on the Judiciary, H.R.Rep. No. 94-247, U.S.Code Cong. & Admin.News 1975, p. 674, 1975 Amendment. The case law has confirmed this construction of Rule 15, holding that it does not contemplate use of depositions of adverse witnesses as discovery tools in criminal cases. *See, e.g., United States v. Fischel,* 686 F.2d 1082, 1091 (5th Cir.1982); *United States v. Adcock,* 558 F.2d 397, 406 (8th Cir.), *cert. denied,* 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 377 (1977).

Rule 16 treats discovery and inspection in criminal cases. Rule 16(d) places the regulation of discovery in the hands of the trial judge. The subsection appears to give the district court significant discretionary power to make such orders as are appropriate. In context, however, Rule 16 appears to limit discovery to items other than depositions. The rule states that the court may permit a defendant to have access to tangible items, to copy written papers, and to receive statements under certain circumstances. Moreover, in 1974, amendments to Rule 16 were proposed to permit parties access, in normal circumstances, to the names and addresses of the other side's witnesses. Those proposed amendments were rejected by the Conference Committee, which stated:

"A majority of the Conferees believe it is not in the interest of the effective administration of criminal justice to require that the government or the defendant be forced to reveal the names and

review of any sanctions imposed directly on them by appeal of contempt proceedings.

The government, however, has sufficiently alleged injury to its own legal rights as a party to seek the writ of mandamus in this case, by

alleging that the district court acted beyond its jurisdiction in ordering depositions as a discovery device, which is forbidden by Fed.R. Crim.P. 15(a). *See In re United States,* 348 F.2d 624, 625 (1st Cir.1965).

addresses of its witnesses before trial. Discouragement of witnesses and improper contact directed at influencing their testimony, were deemed paramount concerns in the formulation of this policy."

Fed.R.Crim.P. 16, 1975 Amendment, Conference Committee Notes, H.R.Rep. No. 94–414, U.S.Code Cong. & Admin.News 1975, pp. 674, 713. In view of Congress' explicit rejection of discovery of the identity of witnesses, we cannot read Rule 16 as providing a basis for the trial court to order the depositions of adverse witnesses in criminal prosecutions.

■ In our view, the only possible source for the district court's authority to make the order it did in the present case is in its inherent power to control and supervise its own proceedings. *Cf. Fischel*, 686 F.2d at 1091. As a sanction for government misbehavior, can the trial court order the depositions of specific government witnesses by defendants?

Against finding that the court had the inherent authority to make this order is the scheme of the Federal Rules of Criminal Procedure, which provide detailed rules for essentially all aspects of criminal trials and contain no explicit statement that the trial court has such power. Those rules authorize certain explicit sanctions for particular infractions: Rule 26.2(e) permits the court to strike the testimony of a witness or to declare a mistrial for failure to comply with an order to deliver a statement; Rule 48(b) permits the court to dismiss a case if there is unnecessary delay in presenting charges to a grand jury or to a court, or there is unnecessary delay in bringing a defendant to trial; Rule 16(d)(2) permits the court to prohibit a party from introducing evidence it has not disclosed as the court required. What the district court did here is nowhere specifically authorized as a sanction.

On the other hand, the courts have long recognized that trial judges must be able to control their own proceedings to ensure the fair administration of justice within the confines of the law. We have recognized the principle that witnesses in a criminal

prosecution belong to no one, and that, subject to the witness' right to refuse to be interviewed, both sides have the right to interview witnesses before trial.

"As a general rule, a witness belongs neither to the government nor to the defense. Both sides have the right to interview witnesses before trial. *Callahan v. United States*, 371 F.2d 658 (9th Cir.1967); *United States v. Long*, 449 F.2d 288 (8th Cir.1971), *cert. denied*, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 247 (1972). Exceptions to this rule are justifiable only under the 'clearest and most compelling circumstances.' *Dennis v. United States*, 384 U.S. 855, 86 S. Ct. 1840, 16 L. Ed. 2d 973 (1966)."

*United States v. Cook*, 608 F.2d 1175 (9th Cir.1979), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *accord United States v. Pinto*, 755 F.2d 150, 152 (10th Cir.1985); *United States v. Walton*, 602 F.2d 1176, 1179–80 (4th Cir.1979). This view is bolstered by the American Bar Association's Standards for Criminal Justice § 3–3.01(c), providing that the prosecutor will not discourage or obstruct communications between prospective witnesses and defense counsel and that it is unprofessional conduct for the prosecutor to advise a prospective witness to decline to give the defense information that person has a right to give. *See also* Model Rules of Professional Conduct Rule 3.4(f).

Additionally, a number of cases, including at least one from this circuit, while denying relief on various grounds, assume that the district court has the power, at least in unusual circumstances, to order the taking of adverse witnesses' depositions in criminal cases. *See Pinto*, 755 F.2d at 152; *Cook*, 608 F.2d at 1180–82; *cf. Walton*, 602 F.2d at 1180 (duty of court to ensure defense counsel access to secluded witness under controlled arrangements). The factual circumstances of the case before us, as found by the district judge, echo those of *Gregory v. United States*, 369 F.2d 185 (D.C.Cir.1966), in which the appellate court found, on direct appeal after conviction, that prosecutorial interference with a de-

fendant's access to witnesses required reversal because it denied the defendant a fair trial.

■ Although the question is a close one, we cannot find the order entered here as a sanction for the government's interference with a defendant's access to potential prosecution witnesses to be wholly beyond the district court's jurisdiction. *See Dalton,* 733 F.2d at 716. An order merely to cease such interference, after the fact, might be insufficient because the witnesses' free choice might have been already perverted and the witnesses likely to refuse voluntary interviews. Accordingly, we are unwilling to issue a writ of mandamus on this ground.

## II

■ Did the district court so clearly abuse its discretion in making an order requiring government witnesses be deposed by a defendant as to constitute a usurpation of power? *See Dalton,* 733 F.2d at 716. The court found that government prosecutors "by words, implications or non-verbal conduct of the prosecutor, either intended or unintended" informed the witnesses that the government did not want them to talk to the defense, and "substantially chilled" their prior willingness to do so. Memorandum and Order at 8, 11. As we hold above, the district court has the power in extraordinary circumstances to permit the taking of an opposition witness' deposition. These findings constitute such extraordinary circumstances. Whether the court so abused its power as to warrant issuance of a writ of mandamus turns then on whether we may reject the district court's factfinding that the government actively interfered with defense counsel's access to these witnesses. When the court acts within its jurisdiction, the threshold showing necessary to secure a writ of mandamus is higher than mere error, even error that might lead to reversal on a direct appeal. *See Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35–36, 101 S.Ct. 188, 190, 66 L.Ed.2d 93 (1980); *Varsic v. U.S. District Court,* 607 F.2d 245, 250 (9th Cir.

1979). The trial court's action must be so clearly without proper basis as to amount to a usurpation of power.

■ Had we been the triers of fact we might well have ruled differently than did the district court, but we cannot say that the court's findings of fact are clearly erroneous. The district court explicitly found the testimony of the defendants' investigator, R. Jon Foster, and the witnesses' attorney, Neil Lee Thompson, most credible. The district court expressly relied on Foster's testimony that witnesses Jett and Steele told him that government representatives told each of them they could not or should not talk with defense representatives. To the extent that Foster's testimony was hearsay, the government made no objection.

While both Steele and Jett denied telling Foster that government representatives had advised against speaking with defense representatives, neither could recall many of the details of their conversations with Foster and with government counsel. Steele did not deny that he was considering contact with the defense before his meeting with government counsel, and Jett corroborated Foster's testimony that Jett had earlier intended to meet with defendants' counsel but had changed his mind. Jett testified that he could not recall whether government counsel had emphasized not speaking with defense representatives, and he also testified that he changed his mind after he obtained his own counsel and was granted immunity.

Attorney Thompson testified that the prosecution had effectively communicated to him, Jett and Steele its preference that the witnesses not meet with the defense. He also corroborated Jett's willingness to meet with defendants' counsel earlier, and Jett's change of mind in the context of negotiations for Jett's immunity from prosecution. Thompson testified that he changed his own advice, which would have permitted Jett to give defense counsel an oral statement, after government prosecutors offered to provide the defense with a copy of Jett's statement to the government.

The witnesses' earlier intent, their change of mind, and the timing of their change of mind is uncontroverted; the circumstantial record bolsters Foster's direct if disputed testimony. Moreover, the record shows that, regardless of the witnesses' unwillingness following their meetings with government counsel to meet informally or privately with defense representatives, both Jett and Steele have expressed an initial and continuing willingness to meet with defense counsel in a deposition setting.

The case is not compelling for finding improper governmental interference with the defense's access to these witnesses, particularly in view of denials of government interference by the witnesses themselves. But the district court is the factfinder. Moreover, this is a petition for a writ of mandamus, requiring that we find the district court so clearly abused its discretion as to constitute usurpation of power. The Supreme Court in *United States v. Will*, 389 U.S. 90, 96–98, 100 n. 10, 88 S.Ct. 269, 274–75, 19 L.Ed.2d 305 (1967), strongly suggested that an even higher standard than in civil cases is required for grant of the writ in criminal prosecutions. "This is not to say that mandamus may never be used to review procedural orders in criminal cases.... But this Court has never approved the use of the writ to review an interlocutory procedural order in a criminal case which did not have the effect of a dismissal." *Id.* at 97–98, 88 S.Ct. at 274–75. Although *Will* is distinguishable on its facts, the Court's comments there support our reluctance to rule that this district court so clearly abused its discretion as to constitute a usurpation of its power.

Petition DENIED.

JOHN P. MOORE, Circuit Judge, dissenting:

While I do not disagree with the legal principles set down by the court in this case, I cannot agree with the court's analysis of the record. Accordingly, I must respectfully dissent.

The court here indicates a trial judge has authority to fashion expedient remedies in a criminal case when it is disclosed that the government has interfered with a defendant's right of access. I agree with that rule as a general proposition, but this is not a case for its application. Here, the evidence simply does not support the conclusion upon which the trial court determined to apply that remedy. Because I believe the trial judge misconstrued the evidence, he ultimately usurped his authority by granting relief beyond the purview of the Rules of Criminal Procedure. I would, therefore, grant mandamus.

This court's determination that the trial judge did not abuse his discretion in ordering oral depositions turns upon the conclusion that the evidence supports the trial court's finding that the government interfered with the defendants' right of access to prosecution witnesses.[1] While suggesting that were we to decide the facts we might even have reached the opposite conclusion, the court nevertheless follows the traditional course which yields to factual determinations made by the trial court. I have no quarrel with that tradition; indeed, its underpinnings are sound and not to be ignored. Consequently, I do not lightly state it is wrong to follow tradition here.

Yet, I am troubled deeply that by adhering to the trial court's analysis of the evidence we have placed our imprimatur on an action that my judgment tells me is unfounded. My chief difficulty with the find-

1. I have some trouble characterizing the basis for the trial court's order. The written order entered after the petition was filed in this case appears to sanction the government for improper conduct; yet, the oral order entered following the hearing casts the relief in a different form. Indeed, the judge stated in his bench ruling: "I think it's grossly unfair, when a person is charged with a crime, with a serious crime as this, that the one side has substantial access to the witnesses in advance and the other side not. The whole idea of an adversary system is that there should be equal opportunity from both sides to bring out the truth." Nevertheless, this court's opinion proceeds from the basis that the depositions were ordered as a sanction, and I shall accept that lead.

ings this court holds are not clearly erroneous is that those findings are rooted in the trial court's conclusion that the testimony of Mr. Foster was more credible than that of the other witnesses.[2] The source of my trouble is that Mr. Foster's testimony, insofar as it is contrary to that of the others, is pure hearsay. By definition, that testimony is inherently unreliable. Thus, we have before us a case in which a trial court chose to believe one witness rather than three, even though the testimony of the one was not clothed in the garb of credibility woven in the traditional fabric of reliability.

The court avoids dealing with this problem on the simple ground that the government made no objection. Unfortunately, we thereby beg the question. When a case is made to turn on the credibility of a witness, the nature and implications of his hearsay testimony cannot be shrugged off simply because no objection was made. The concern here is not whether Mr. Foster's testimony was admissible, but whether it is by definition unreliable and thus an improper basis for determining credibility.

The credibility of testimony depends on the perception, memory, and narration of the witness. [See Fed.R.Evid. 801 advisory committee note, The Hearsay Problem.] The significance of hearsay and its affect on credibility was addressed by Chancellor Kent, who said: "Hearsay testimony is from the very nature of it attended with ... doubts and difficulties and it cannot clear them up. 'A person who relates a hearsay is not obliged to enter into any particulars, to answer any question, to solve any difficulties, to reconcile any contradictions, to explain any obscurities, to remove any ambiguities; he entrenches himself in the simple assertion that he was told so, and leaves the burden entirely on his dead or absent author.'" *Coleman v. Southwick*, 9 Johns. 50 (N.Y.1812), cited in McCormick's Handbook of the Law of Evidence, § 245, at 583 (2d ed. 1972). Justice Marshall also lamented the "intrinsic weakness" of hearsay evidence. *Mima Queen v. Hepburn*, 7 Cranch 295, 3 L.Ed. 348 (1813). Indeed, the hearsay rule exists because extrajudicial statements "lack the conventional indicia of reliability...." *Chambers v. Mississippi*, 410 U.S. 284, 298, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297 (1973). Reliability is the touchstone of credibility because the absence of reliability connotes "the diminished probability of factual accuracy in the evidence-gathering process." Nesson, *The Evidence or the Event? On Judicial Proof and the Acceptability of Verdicts*, 98 Harv.L.Rev. 1357, 1372 (1985). In the absence of a recognized exception which makes a hearsay statement reliable, and when no other "particularized guarantee of trustworthiness" is present, the evidence is presumptively unreliable. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

The issue of reliability has been given another spin in this case because the fact finder used hearsay as a basis for determining credibility. The problem of reliability is thus enhanced because, in reality, it is not the credibility of the *witness* which is gleaned from his testimony but that of the declarant. *See*, Tribe, *Triangulating Hearsay*, 87 Harv.L.Rev. 957, 958 (1974). Here the trial judge listened to Mr. Foster say, in effect, that the witnesses told him the government did not want them to grant

---

**2.** The court notes the trial judge also relied upon the credibility of Mr. Thompson, the attorney for the witnesses. However, other than testifying that his clients possibly could have concluded the government would not have had the witnesses interviewed if it "had its druthers," Mr. Thompson's testimony is not supportive of the trial court's conclusions. Indeed, Mr. Thompson testified that *he* decided it was not in his clients' interest to grant interviews. More-

over, on the basis of Mr. Thompson's advice, the witnesses perceived that their self-interests, and not the government's influence, militated against talking with defense representatives. Indeed, Mr. Thompson stated: "[T]here was no advantage for us to give a statement and if there was no advantage there is going to be disadvantages and so we decided not to give the statement."

defense interviews. Then the trial judge listened to those witnesses deny they had made such statements to Mr. Foster. The trial court resolved the dichotomy in the evidence by finding Mr. Foster was more credible on the subject of what the government actually told the other witnesses. Logic dictates that in order to reach this conclusion, the trial court had to believe that Mr. Foster was more credible because the witnesses told the truth when they talked to *him*, but they did not do so when they testified under oath. Thus postured, the inconsistency of the trial court's findings becomes readily apparent.

Recognizing that the standard of review here is whether the trial court's findings are clearly erroneous, I believe the standard is met in this case. I cannot perceive a justification of any kind for the finding that Mr. Foster was the more credible witness. I ascribe no misdeed to his testimony, for we must presume he was simply relating his recollection of what others told him. Yet, because the evidence upon which the trial court relied consisted only of that recollection, the inherent unreliability of the hearsay testimony undermined Mr. Foster's credibility. Thus, when the trial court hinged its findings on the credibility of Mr. Foster, those findings became clearly erroneous.[3]

The trial judge in this instance perceived a wrong which he thought should be averted. His motives are laudable and unassailable, but his remedy was not lawful. He usurped authority not granted by the Rules of Criminal Procedure because he believed justice required his intervention. Indeed, in a perfect world we would all aspire to do justice and follow the law, but when circumstances indicate it is impossible to do both, judges are bound to the latter course.

---

**3.** The court states the "[F]actual circumstances of the case before us, as found by the district judge, echo those of *Gregory v. United States,* 369 F.2d 185 (D.C.Cir.1966)." I disagree. In *Gregory,* the prosecutor did not deny placing limitations on the defendant's right of access, but here the prosecutors and the witnesses themselves stated no limitations were invoked. Indeed, the trial court found the limitations only by drawing inferences from the testimony which are not supportable in the record. I do not think there is a parallel here with *Gregory* at all.