**In re UNITED STATES of America, Petitioner.**

No. 89–2463.

United States Court of Appeals, Fifth Circuit.

June 14, 1989.

John R. Braddock, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for petitioner.

David Berg, Cheri Duncan, Lynn Hughes, U.S. Dist. Judge, Houston, Tex., for respondent.

Before RUBIN, GARWOOD and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

In this case, the government has applied for a writ of mandamus directing the district court to set aside a pretrial order in a pending criminal case providing for the defense to take, *ex parte*, the discovery deposition of a witness. On the government's motion, we previously stayed the taking of the deposition, which had been scheduled for the following day, in order that we might more fully consider the matter and have the benefit of briefing by both the government and the defense. After considering the briefs and supporting exhibits, we now determine that the government is entitled to the relief sought.

The defendants below are Philip S. Noons and Thomas F. Noons. They were apparently originally named in a criminal complaint filed February 7, 1989, and an indictment was returned against them in the court below on March 8, 1989. The indictment charged violations of 18 U.S.C. §§ 371, 657, and 1001. It alleged that Philip Noons had been employed by Mainland Savings Association (Mainland) in Houston, Texas, whose deposits were insured by the Federal Savings and Loan Insurance Corporation (FSLIC) until it was closed by the FSLIC on or about April 4, 1986. The FSLIC acted as receiver for Mainland from approximately May 1, 1986 through approximately August 5, 1988, and during that time Philip Noons was employed as an as-

set manager with the FSLIC in its capacity as receiver for Mainland. It was alleged that Philip Noons and his brother Thomas Noons conspired to make false statements to and defraud the FSLIC, as Mainland's receiver, by causing it to sell, for less than fair value, an asset of Mainland's to an entity controlled by C. Marshall Rea (Rea). It was further alleged that the Noonses secretly furnished Rea's entity some of the funds that it used to purchase this asset, and that Philip Noons misrepresented to the FSLIC officials making the decision to sell what the asset was worth. The asset in question was an installment note from a third party. The sale of the asset apparently occurred in March 1988, but the conspiracy allegedly continued thereafter and until the time of the indictment, and included efforts to secretly transfer some of the collections on the note to the Noonses.

On April 3, 1989, the Noonses filed in the district court a motion to dismiss the indictment or to suppress evidence. In this motion, they alleged that Rea was their lawyer and that the government, with Rea's cooperation, had secretly recorded both telephone and face-to-face conversations between Rea and the Noonses, and that the recording and the disclosure to the government of these conversations were violations of the Noonses' attorney-client privilege and an invasion of their rights under the Fifth and Sixth Amendments. It was alleged that the indictment resulted from these recordings. The motion requested that the court conduct a pretrial hearing to determine whether the prosecution obtained information for the indictment from Rea by thus invading the privileged confidential communications between attorney and client, stating that such procedure was approved by this Court in *United States v. Fortna,* 796 F.2d 724 (5th Cir.1986). The motion then requested that "upon hearing" the court accordingly dismiss the indictment or, alternatively, disqualify Rea as a witness against the Noonses and suppress all evidence obtained from or by Rea against them.

On April 14, the government filed its response to the motion to dismiss the indictment or suppress evidence, asserting that the recordings of the conversations with Rea had all taken place before the criminal complaint was filed, and that there was no attorney-client privilege because the communications in question were not for a legal opinion, or legal services, or assistance in a legal proceeding, but were rather simply for business advice or to procure Rea to act as a disburser of money or property, and also that they were for the purpose of furthering an intended, present, or continuing illegality.

In the meantime, the Noonses, on April 11, had filed their motion to take Rea's deposition *ex parte* and under seal for the purpose of questioning him regarding his relationship with the Noonses, what he told the government about the Noonses, and "all matters pertinent to this case." This motion recited that Rea's lawyer had informed the Noonses' defense counsel that Rea refused to be interviewed by the Noonses' counsel unless the Assistant United States Attorney was also present.[1] This motion also asserted that the deposition should be *ex parte* in order to preclude further invasions of the Noonses' attorney-client privilege with Rea. The government responded to the motion to take Rea's deposition on April 17, pointing out that Rule 15, Fed.R.Crim.P., did not authorize discovery depositions, and that there was no suggestion that Rea would be unavailable either for trial or for any pretrial hearings, and that there was also no authority for *ex parte* depositions under any circumstances.

On May 1 or 2, the Noonses filed their response to the government's reply to their motion to take Rea's deposition. In this pleading, the Noonses reiterated their allegation that Rea's counsel had informed their counsel that Rea would not talk to the defense unless the Assistant United States Attorney was also present; they also asserted that this precluded them from developing "an 'advice of counsel' defense." In

---

**1.** It is clear that Rea never represented the Noonses in the criminal proceeding; they were represented there by other unrelated counsel.

this pleading, the Noonses further acknowledged that on April 28, 1989, the Assistant United States Attorney had turned over to them the various tape recordings of Rea's challenged conversations with the Noonses (it appears that these conversations took place between October 4, 1988 and February 7, 1989). The Noonses further contended in this pleading that even if the deposition were not authorized under Rule 15, the court had the inherent power to order it.

On May 2, a nonevidentiary hearing was held before the district court on the Noonses' motion to take Rea's deposition. The next day, the district court entered the following brief order which is the subject of this mandamus allegation, viz.:

> "C. Marshall Rea is compelled to testify under oath without the government present for the limited purpose of discovery; the deposition shall remain sealed until further order of this court."

Subsequently, the deposition was scheduled for May 11, 1989.

It appears that at the time of the May 2 hearing, trial on the merits in the case had been set for the following week, but at that time the district court canceled that setting and, as we understand it, the case has not been reset for trial. Apparently, a hearing on the Noonses' motion to dismiss the indictment or suppress evidence is not set, and has never been set.

The district court's order makes no findings and recites no reasons or source of authority for the action taken. Its remarks at the May 2 hearing likewise contained no findings or indication of authority for the order. However, they do indicate some of the district court's concerns. In addressing the Assistant United States Attorney, the court stated that "this is simply a way of getting a compulsory statement from the witness under oath. And you [the government] have the ability to do that [presumably by subpoenaing the witness before the grand jury], the defendants don't." In a similar vein, the court remarked that a defendant "ought to have at least partially the same technique available to him that the government has available to

it [presumably referring to use of the grand jury], which is a statement, in effect, under oath." The court also indicated that the defendants needed to engage in this discovery, stating, "[T]hey need to know with some certainty that this is their former lawyer's statement before they can decide whether to waive the entire attorney-client privilege, or any other statute, including pleading guilty."

■ It is clear that the district court's order is not authorized by Rule 15(a). That rule is limited to depositions taken so that testimony may be "preserved for use at trial." *Id.* It does not authorize depositions for discovery purposes, as the authorities uniformly recognize. We stated in *United States v. Fischel,* 686 F.2d 1082, 1091 (5th Cir.1982), "[d]epositions are not discovery tools in criminal cases." *See also Application of Eisenberg,* 654 F.2d 1107, 1113 n. 9 (5th Cir.1981) ("[i]n criminal cases, depositions are not intended as discovery devices"); *Simon v. United States,* 644 F.2d 490, 498 n. 12 (5th Cir.1981). Other circuits are in accord. *See United States v. Troutman,* 814 F.2d 1428, 1453 (10th Cir.1987); *United States v. Cutler,* 806 F.2d 933, 936 (9th Cir.1986); *United States v. Hutchings,* 751 F.2d 230, 236 (8th Cir.1984), *cert. denied,* 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 75 (1985); *United States v. Steele,* 685 F.2d 793, 809 (3d Cir.), *cert. denied,* 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982); Wright, *Federal Practice and Procedure: Criminal* § 241 at 4 & n. 7 (2d ed.). Nor can the deposition be authorized under Rule 16, Fed.R.Crim.P. That rule does not mention depositions, which are plainly to be governed by Rule 15. Moreover, Rule 16, by its terms, does not authorize discovery of statements of third-party prospective government witnesses, apart from certain exceptions not relevant here, *see* Rule 16(a)(2), and Congress rejected a proposed 1974 amendment to Rule 16 which would have authorized discovery of the names and addresses of the witnesses the government intended to call in its case in chief. Wright, *supra,* § 254 at 86–88. Accordingly, Rule 16 affords no basis for a discovery deposition. *See United States v. Carri-*

*gan*, 804 F.2d 599, 602–03 (10th Cir.1986). Here, however, there was no claim, evidence, or finding that Rea might be unavailable to testify at trial or at any pretrial hearing, and the district court expressly ordered that the deposition was "for the limited purpose of discovery."

We have recognized, however, that in certain limited instances the district court in a criminal case may order discovery not provided for by statute or the Federal Rules of Criminal Procedure. *Fischel*, 686 F.2d at 1091. This power was recognized by the Tenth Circuit in *Carrigan*, where it refused the government's requested mandamus to set aside the district court's order for the discovery deposition of two government witnesses, the district court's having found, on adequate evidence, that the government had wrongfully interfered with the witnesses' freedom to talk with defense counsel, the witnesses having previously to the government's misconduct indicated their willingness to talk to the defense, but thereafter having refused to do so. The Tenth Circuit in *Carrigan* described the district court's order as "a sanction for the government's interference with a defendant's access to potential prosecution witnesses," and refused to set the order aside because it found that the record supported "the district court's factfinding that the government actively interfered with defense counsel's access to these witnesses." *Id.*, 804 F.2d at 604.

The Noonses rely heavily on *Carrigan*. But that decision does not support them for a variety of reasons. To begin with, here there is no allegation, no finding, and no evidence that the government in any way impeded the defendants' ability to talk to Rea. That key element of *Carrigan* is wholly missing. No right of a defendant is violated when a potential witness freely chooses not to talk. *Troutman*, 814 F.2d at 1453, and cases cited. *See also Fischel*, 686 F.2d at 1092 ("no witness is obligated to honor a defendant's request for an interview"). The district court proceeded on the erroneous assumption that the defendants had a right to have Rea talk to them whether or not he freely wished to do so. Further, there is no allegation, evidence, or finding that Rea ever did refuse to talk to the Noonses or their counsel; rather, there is only the allegation that he refused to do so unless government counsel was also present. There is nothing improper about this. Indeed, the order at issue in *Carrigan* directed that the deposition be taken "in the presence of their [the witnesses'] attorney and the government's counsel." *Id.*, 804 F.2d at 601.

In these circumstances, there is no basis whatever for the deposition order. *Cf. Cutler*, 806 F.2d at 936 ("[n]o court has allowed a Rule 15 deposition solely for discovery"; distinguishing *Carrigan*).

■ Moreover, the deposition order is unauthorized not only because it is for a purely discovery deposition, but also because it provides for the deposition to be *ex parte* and sealed. No matter what the case—civil or criminal—depositions are *never* ordered where one party to the suit can be present, ask the questions, and hear the answers, and the opposing party in the case is not only prevented from being present and asking questions, but is also denied even the opportunity to know what the questions and answers are. Such a procedure is not only wholly unauthorized, it is contrary to the most basic presuppositions of our adversary system of litigation.

■ Nor do we believe that such an unprecedented procedure can be justified by the allegations that Rea, at the government's behest, wrongfully breached the attorney-client privilege between himself and the Noonses by disclosing to the government the Noonses' confidential communications to him which were protected by that privilege. The government denied that the communications were within the privilege, and further asserted that even if they were, they were covered by a well-recognized exception thereto. The May 2 hearing was not to resolve any of those issues, and no evidence on them was heard then; nor did the district court in its May 3 order make any findings in those respects. Whether there was a breach of the attorney-client privilege (and, if so, the government's role in it and any resulting prejudice

to the Noonses) was to be resolved at the evidentiary pretrial hearing, which the Noonses requested (and the government did not oppose), on their motion to dismiss the indictment and to suppress evidence. Such a hearing, as the Noonses expressly recognized, is the appropriate vehicle to resolve those issues, as we held in *United States v. Fortna*, 796 F.2d 724 (5th Cir. 1986). And, *Fortna* makes clear that at such a hearing the Noonses would have the right to compel Rea's appearance and have him testify. There is no indication, allegation, or finding that Rea would be unavailable for such a hearing. However, though there is no suggestion of any impediment or opposition to such a hearing, it has never been held.

■ We reject any suggestion that the sealed, *ex parte* discovery deposition was necessary or appropriate because of some danger that by calling Rea at the hearing on the motion to dismiss or suppress the Noonses would waive their privilege as to client-attorney confidential communications between themselves and Rea. We are aware of no authority that would support such a waiver, and neither the district court nor the Noonses (here or below) have cited any authority which assertedly supports it. Certainly, it is not a waiver of the privilege to object to the attorney's proffered testimony, even though in connection with laying the predicate for the objection the relationship and the nature of the communication must be explored. By the same token, it would appear that use of the attorney's testimony by the Noonses at the hearing on their motion to dismiss the indictment or to suppress, to establish that the indictment, or the evidence to be suppressed, resulted from a government-induced breach of the attorney-client privilege would not result in a waiver thereof. Seeking to thus enforce the privilege hardly seems to constitute a waiver of it. Further, these concerns are

more appropriately addressed at the suppression hearing, or subsequent trial on the merits, or by an *in limine* ruling (never sought by the Noonses) in respect thereto, than by a deposition order of the kind here at issue. The courts have not been reluctant to afford such protection, where needed, in respect to developing evidence at a suppression hearing. *See, e.g., Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Finally, as previously noted, it has yet to be established or found that the communications in question were protected by the attorney-client privilege.[2]

■ We recognize that generally discovery and similar pretrial orders, even erroneous ones, are not reviewable on mandamus, particularly in a criminal case. We intend no departure from that salutary principle. However, where, as here, the applicant has no other means of redress, whether by present appeal, appeal after trial, or otherwise, the circumstances are exceptional, and the applicant establishes "a clear and indisputable abuse of discretion or usurpation of judicial power by the trial court," we have held that mandamus is available. *See In re First South Savings Ass'n*, 820 F.2d 700, 705–07 (5th Cir. 1987). We also note that the Tenth Circuit in *Carrigan* indicated that it would have granted mandamus to set aside a district court deposition order in a criminal case had it not found that there was some evidence to support the district court's factual finding that the government wrongfully interfered with the defense access to the witnesses. Here, the case for mandamus is much stronger. We need not parse the evidence, for there was no evidentiary hearing. Moreover, here neither the allegations of the motion to take the deposition, nor the district court's order, nor its remarks at the hearing state any lawful

---

2. Nor do we see how the Noones' asserted "'advice of counsel' defense"—mentioned in their last-minute reply to the government's opposition to their motion to take Rea's deposition but not adverted to by the district court—furnishes any support for the deposition order. Again, such a "defense" is something which can be established at trial. Further, the Noonses certainly know

what Rea told them and what they relied on. Moreover, they were furnished the tapes prior to the May 2 hearing. All this also makes suspect any claimed need for discovery, even if depositions (to say nothing of *ex parte*, sealed depositions) were proper for discovery in criminal cases.

grounds for the order. It was wholly unauthorized. Further, so far as we can determine, the order is entirely unprecedented and constitutes a clear and very substantial departure from the fundamental principles governing criminal pretrial and trial procedures in federal court. The district court's deposition order in these circumstances was so plainly and substantially in excess of its authority, and so significantly contrary to the established rules and precedents governing depositions in criminal cases, as to constitute a clear and indisputable abuse of its more general discretion to control the incidents of trial and pretrial procedure in cases before it. There is no available remedy other than mandamus. This, then, is that most rare and exceptional case where relief by mandamus is appropriate respecting a criminal case deposition order.

Accordingly, we determine that the government is entitled to the writ of mandamus which it seeks. As we assume that the district court will set aside its May 3 order in light of this opinion, we do not direct that the writ of mandamus now actually issue.

MANDAMUS GRANTED.