**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bobby J. ANDERSON, Defendant–
Appellant.**

**No. 94–10817.**

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1995.

Ward Casey, Ft. Worth, TX, for appellant.

Marc W. Barta, Christopher A. Curtis, Fred Schattman, Asst. U.S. Attys., Paul E. Coggins, U.S. Atty., Ft. Worth, TX, for appellee.

Before POLITZ, Chief Judge, and HILL * and DeMOSS, Circuit Judges.

PER CURIAM:

Bobby J. Anderson appeals his sentence of eighty-one months on one count of money laundering to which he pled guilty. We vacate his sentence and remand for re-sentencing because we find that the district judge should have recused himself from this case prior to sentencing.

On January 30, 1992, Anderson was charged in a four count indictment with three counts of distribution of cocaine base, and one count of maintaining a place for the purpose of distributing a controlled substance. On March 12, 1992, Assistant U.S. Attorney (AUSA) Frederick Schattman, defense attorney Ward Casey and Anderson

* Circuit Judge of the Eleventh Circuit, sitting by    designation.

executed a Memorandum of Understanding in which Anderson agreed to an interview in which he would provide "the full extent of his knowledge" concerning the drug trafficking and money laundering activities of his former associates. The government agreed that, after evaluating Anderson's information, it would "make some nature of a plea offer" to Anderson. The Memorandum of Understanding provided that if Anderson rejected the government's offer "no statements made by [Anderson] in the interview will be used against him in any criminal trial . . . [except to impeach inconsistent testimony]."

After interviewing Anderson, on May 11, 1992, the government issued a superseding information charging Anderson with laundering $7000 in drug proceeds. Anderson waived his right to prosecution by indictment, and pled guilty pursuant to a plea agreement on the day the information issued. The plea agreement provided, *inter alia*, that Anderson was subject to imprisonment of up to twenty years and that he would continue to cooperate fully with government investigators and testify truthfully if called as a witness in any judicial proceeding. The government agreed not to prosecute Anderson in the Northern District of Texas for any conduct which Anderson made known to the government and or use any evidence derived from Anderson's cooperation in any criminal prosecution against him in the Northern District of Texas. The government promised to move to dismiss the January 30th indictment if Anderson complied with the plea agreement. The agreement stated that the U.S. Attorney would not make a sentencing recommendation, the district court would determine the sentence, and that "[t]here is no agreement as to what the sentence will be."

The district court accepted Anderson's guilty plea, set sentencing for July 17, 1992, but withheld his decision whether to accept the plea agreement pending a review of the Presentence Investigation Report (PSI).

On July 12, 1992, the United States requested the court postpone the sentencing to allow Anderson to testify in the trial of another drug conspiracy, and sentencing was postponed until November 6, 1992. At Anderson's request, the sentencing date was again reset to October 30, 1992.

At sentencing, the district court announced that it would reject the plea agreement on the ground that a money laundering charge did not adequately reflect the seriousness of Anderson's conduct. The district court offered to let Anderson withdraw his plea to money laundering and directed the parties to prepare for trial on the original indictment on November 16, 1992.

AUSA Schattman wrote a letter to defense counsel Casey which stated that the U.S. Attorney for the Northern District of Texas, Marvin Collins, had authorized Schattman to inform Casey that the government believed that Anderson had complied with the plea agreement and that, if Anderson persisted in his guilty plea, the government would move to dismiss the first indictment.

Anderson elected not to withdraw his guilty plea, and the government moved to dismiss the January 30th indictment and filed a notice that it did not intend to prosecute the charges. The district court held a hearing on the motion to dismiss on November 13, 1992. The district court denied the motion to dismiss the indictment and directed the parties to proceed to trial. At the end of the November 13th hearing and at a subsequent hearing, the district court expressed extreme displeasure with Schattman indicating that the government had attempted to usurp the district court's prerogative to reject the plea agreement. The district court suggested the possibility that Anderson had received lenient treatment because his uncle works with the Drug Enforcement Agency task force and Schattman. The district court ordered U.S. Attorney Collins personally to appoint a new prosecutor to try the original indictment.

Anderson moved to recuse the district judge. The government moved to stay trial on the January 30th indictment and sought mandamus relief. This court did stay the trial. During the stay, the district court denied Anderson's motion for recusal. On May 12, 1994, we ordered that a writ of mandamus should issue if the district court did not dismiss the January 30, 1992, indictment within 30 days.

The district court dismissed the January 30th indictment on May 23, 1994. Anderson filed another motion for recusal and a motion to dismiss the money-laundering indictment because of the delay in sentencing. At the hearing on the motion, the district court denied both motions and directed the parties to discuss what factors could be considered by the court in determining whether to depart from the sentencing range for the money laundering charge. The government was ordered to deliver to the probation officer "all information and items ... relevant to the sentencing of [the] defendant." The materials furnished included a copy of the March 12, 1992, Memorandum of Understanding.

The government subsequently filed a sealed U.S.S.G. § 5K1.1 motion for downward departure. The motion stated that Anderson had provided substantial assistance to the government by testifying at the trials of other drug traffickers. Anderson's potential testimony had been "a crucial factor" in another trafficker's decision to plead guilty and cooperate with the government. Anderson had provided credible information concerning other defendants although he was not called to testify at their trials because his testimony would have been cumulative. The government also asserted that Anderson's cooperation had been timely, truthful, and reliable.

The district court directed the probation officer to prepare a memorandum explaining what Anderson's sentencing range would have been "if Anderson had been convicted of drug trafficking as a part of the [original] conspiracy."[1] The probation officer was to base her calculations on PSI information which she considered reliable "including any information ... that might be considered to be information that is subject to the provisions of U.S.S.G. § 1B1.8." Section 1B1.8 provides that self-incriminating information obtained from a defendant under a cooperation agreement with the government may not be used to determine the defendant's guideline sentencing range. The district court stated his intention to "make whatever use is appropriate" of the information at Anderson's sentencing unless "an objection is made thereto pursuant to the provisions of this order and the court is persuaded that there is a valid reason why such information should not be considered."

At a subsequent hearing, the district court stated that he had not been previously informed of the existence of the March 12th Memorandum of Understanding and questioned whether either of the written agreements with Anderson was covered by U.S.S.G. § 1B1.8. Schattman responded that both agreements were § 1B1.8 agreements. The district court explained that he had a "serious concern" whether either agreement was pursuant to § 1B1.8 and directed Anderson and the government to file memoranda on the issue.

Both parties told the court that it was their intent that all information provided by Anderson would be considered as having been furnished pursuant to the cooperation provision of the plea agreement and excluded from sentencing consideration under § 1B1.8. After reviewing the memoranda, the district court entered a lengthy sealed order in which he concluded that Anderson and the government had inconsistent positions concerning the existence of a cooperation agreement. The district court ordered an evidentiary hearing on the § 1B1.8 issue.

The government filed a reply to Anderson's memorandum which stated that "[t]here appear[ed] to be no material difference between the positions taken by the government and the defendant [on the § 1B1.8 issue]." Anderson filed a supplemental memorandum which argued that his position was not inconsistent with that of the government and that both parties had intended that all of Anderson's statements to the government would be protected by § 1B1.8.

At the hearing, the district court provided the parties with a written order explaining his "tentative views" that several sentencing issues, including the § 1B1.8 issue, should all be resolved adversely to Anderson. After concluding the hearing, the district court re-

---

1. In doing so, the district court sought to determine what sentence might have been imposed after conviction under the original indictment— the indictment dismissed only after order of this court.

convened court to record his comments concerning his unhappiness with AUSA Schattman's handling of the case. The district court stated that there was "absolutely no legal basis" for the government's contention that the debriefing information Anderson provided pursuant to the Memorandum of Understanding could not be used at sentencing. The district court expressed his belief that Schattman had deliberately misled the court concerning the nature of the government's agreement with Anderson and he alluded to Schattman's "relationship" with Anderson's uncle.[2]

The district court held that the wording of the Memorandum of Understanding immunized self-incriminating information provided by Anderson only if he rejected the plea agreement. Therefore, he concluded that the Memorandum of Understanding was not an agreement pursuant to § 1B1.8. Although the district court found the wording of the plea agreement to be ambiguous, he held that it was "adequate to invoke the § 1B1.8 protections as to post-plea information."

The probation officer determined that Anderson's sentencing range should be calculated using the money laundering guidelines rather than the drug quantity table. Anderson's base offense level was 20. The probation officer increased the base offense level by three because the laundered funds were drug proceeds and by an additional six level on the ground that all of the 2.8 million dollars[3] which the conspirators spent on cocaine during the period of Anderson's involvement was relevant conduct foreseeable to Anderson. In response to Anderson's objection, the probation officer conceded that the six-level increase might be precluded by § 1B1.8(a) and deferred the issue for judicial determination. With a three-level adjustment for acceptance of responsibility, Anderson's total offense level was 26. Anderson's criminal history category of II

resulted in a guidelines sentencing range of 70–87 months.

At sentencing, the district court reiterated that he was entitled to consider any information provided by Anderson prior to the May 1992 formal plea agreement. He overruled Anderson's objection to the use of that information, and overruled his objection to the six-level increase based on the finding that the offense conduct involved 2.8 million dollars. The district court concluded that the 2.8 million figure could be supported without reference to any information other than Anderson's stipulation in his guilty plea.

The district court announced that it was appropriate to consider self-incriminating information provided prior to Anderson's plea agreement and cited other facts which included Anderson's admission that he had participated in "money counts" of $70,000 to $90,000 "at least 100 times." Anderson objected that without the self-incriminating information there was insufficient evidence to support the six-level increase.

In his memorandum opinion and order, the district court overruled Anderson's objection to the six-level increase on the ground that the entire 2.8 million dollars was related to reasonably foreseeable joint criminal activity. The district court found that the 2.8 million dollar figure could be supported by the stipulated facts without reference to other information provided by Anderson.

Citing the potential sentence that Anderson could have received if convicted on the original indictment, the district court denied the government's motion for downward departure. The district court noted that he had "given a lot of thought to" the possibility of an upward departure, and that if the six-level increase was not available, he was "almost certain that [he] would make an upward departure." Because of Anderson's cooperation and the availability of the six-level increase, the district court did not depart up-

2. We stated in our order on the petition for mandamus that the alleged "special relationship" between Anderson's uncle and Schattman did not support the district court's conclusion that the decision to dismiss the January 30th indictment was contrary to the public interest.

3. This figure was based upon statements of a co-conspirator contained in reports of interviews he had with the DEA.

ward, but imposed a sentence of 81 months, six months less than the maximum under the guidelines.[4]

We find no violation of the Sixth Amendment or the Due Process Clause with respect to the delay in Anderson's sentencing. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). Nevertheless, under the circumstances of this case, we hold that the sentence imposed by the district court should be vacated and we direct the Chief Judge for the Northern District of Texas to assign this case to a different judge of that district for resentencing. *See e.g., Matter of Hipp, Inc.,* 5 F.3d 109, 116 (5th Cir.1993); *Chitimacha Tribe of La. v. Harry L. Laws Co.,* 690 F.2d 1157, 1165 (5th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *Parliament Insurance Co. v. Hanson,* 676 F.2d 1069, 1075 (5th Cir.1982); *Potashnick, v. Port City Construction Co.,* 609 F.2d 1101, 1111 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). *See also Liteky v. United States,* — U.S. —, —, 114 S.Ct. 1147, 1155, 127 L.Ed.2d 474 (1994); *Davis v. Board of School Comm'rs of Mobile County,* 517 F.2d 1044, 1051 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).

SENTENCE VACATED and case REMANDED for reassignment to a different judge for proceedings consistent with this opinion.

4. The district court stated that he was giving Anderson credit for the 24 months he had already spent in home detention pending sentencing.