# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 00-20379
_____

IN RE:

OCCIDENTAL PETROLEUM CORPORATION,

Petitioner.

_____

Petition for Writ of Mandamus to
the United States District Court
for the Southern District of Texas

_____

June 28, 2000

Before SMITH, BARKSDALE, and
PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

This matter involves a discovery order granted despite assertions of attorney-client privilege by petitioner Occidental Petroleum Corporation ("Occidental"), which seeks a writ of mandamus instructing the district court to vacate that order. Finding no clear error, because the plaintiff class is not subject to Occidental's attorney-corporate client privilege under *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103-4 (5th Cir. 1970), we deny the petition.

I.

In the underlying civil litigationSS*Croucher v. MidCon Corp. Employee Stock Ownership Plan Admin. Committee,* the plaintiff class consists of employees of the MidCon Corporation ("MidCon"). Before this litigation began, MidCon was a wholly-owned subsidiary of Occidental. For the benefit of MidCon employees, Occidental established the MidCon Employee Stock Ownership Plan ("ESOP"), funded by 1.4 million shares of Occidental preferred stock originally valued at $1.4 billion. That stock was designed to track the value of MidCon. Occidental subsequently sold Mid-Con and entered into a negotiated settlement with the ESOP trustee, the U.S. Trust Company of California, N.A., respecting the preferred shares.

Plaintiffs sued Occidental and others under ERISA,[1] alleging various breaches of fiduciary duty relating to the ESOP. Pursuant to that litigation, the district court granted plaintiffs' request for discovery of nearly 200 Occidental documents, over Occidental's claim of attorney-client privilege.

## II.

To obtain mandamus relief,[2] Occidental must do more than prove merely that the court erred.[3] "Mandamus is an extraordinary remedy reserved for extraordinary cases," one granted "not as a matter of right, but in the exercise of a sound judicial discretion."[4] A mere showing of error, after all, may be corrected on appeal: "[I]t is more than well-settled that a writ of mandamus is not to be used as a substitute for appeal."[5]

Thus, for Occidental to establish entitlement to mandamus relief,[6] it must show not only that the district court erred, but that it *clearly and indisputably erred*.[7] Moreover, Occidental must show that the "clear and indisputable" error is *irremediable on ordinary appeal*,[8] thereby justifying emergency relief in

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

[2] *See* 28 U.S.C. § 1651; FED. R. APP. P. 21(a).

[3] *See In re United States*, 878 F.2d 153, 158 (5th Cir. 1989) (noting that "generally discovery and similar pretrial orders, even erroneous ones, are not reviewable on mandamus").

[4] *Southern Pac. Transp. Co. v. City of San Antonio*, 748 F.2d 266, 270 (5th Cir. 1984) (citations omitted).

[5] *In re American Marine Holding Co.*, 14 F.3d 276, 277 (5th Cir. 1994). *Cf. Holiday Inns, Inc. v. Fay,* 451 F.2d 343, 344 (5th Cir. 1971) ("Our denial of mandamus at this time is without pre-
(continued...)

(...continued)
judice to reconsideration of the petition on the record as further developed, should it be requested after proceedings below are completed.").

[6] *See American Marine*, 14 F.3d at 277.

[7] *See, e.g., In re Dresser Indus., Inc.,* 972 F.2d 540, 542-43 (5th Cir. 1992) ("We will therefore grant the writ only if the petitioner can show its right to the writ is clear and indisputable. Mandamus is appropriate when the trial court has exceeded its jurisdiction or has declined to exercise it, or when the trial court has so clearly and indisputably abused its discretion as to compel prompt intervention by the appellate court.") (citations omitted); *Texaco Inc. v. Louisiana Land & Exploration Co.*, 995 F.2d 43, 43 (5th Cir. 1993) ("We denied relief, stating, in an unpublished order, 'We are not persuaded that petitioners have met the high standards for the extraordinary writs [of either mandamus or prohibition], despite not insubstantial arguments that the courts below erred in their treatment of privilege.'"); *In re Terra Int'l, Inc.*, 134 F.3d 302, 305-6 (5th Cir. 1998) (holding that, because "[w]e will grant a writ of mandamus only when the petitioner demonstrates that its right to the writ is clear and indisputable," there was no need to "intimate . . . view as to the merits of Terra's claims of privilege and other limitations on discovery") (citation omitted).

[8] *See Maloney v. Plunkett*, 854 F.2d 152,
(continued...)

2

the form of mandamus.[9]

(...continued)
154-55 (7th Cir. 1988) ("Ordinarily even a clear error in an interlocutory ruling is not a ground for the extraordinary remedy of mandamus. Clear error is a necessary condition, and one easily satisfied here as we have just seen, but it is not a sufficient condition. Not only must the error be clear; it must be irremediable by the regular appellate remedies. And ordinarily the inconvenience, lost time, and sunk costs of such further proceedings as could have been avoided by correcting the trial judge's error are not considered the kind of irremediable harm that will satisfy the stringent requirements for issuing a writ of mandamus. It could of course be argued that when the error is clear, of course the appellate court should correct it at once; the court will have to do it sooner or laterSS-why not sooner? But the court may not have to do it later; the error may be mooted by the victory of the party against whom it was committed. And to determine whether an error is clear enough to warrant immediate correction can itself be a time-consuming endeavor. . . . If as we have seen the ordinary inconvenience of a new trial cannot justify the use of the writ, still, extraordinary inconveniences may do so.").

[9] We acknowledge that, if it is able to show that the district court clearly erred in ordering discovery because the requested documents are privileged, Occidental is likely also to be able to prove the necessity for mandamus relief. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed. Cir. 2000) (observing that "mandamus is appropriate 'because maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy.'") (quoting *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1387 (Fed. Cir. 1996)); *In re General Motors Corp.*, 153 F.3d 714, 715 (8th Cir. 1998) ("The
(continued...)

Occidental notes *In re Burlington N., Inc.*, 822 F.2d 518 (5th Cir. 1987), in which we granted mandamus relief, without explicitly requiring a showing of *clear* error, from a discovery order in purported violation of, *inter alia*, attorney-client privilege. But we noted the existence of various other special factors supporting the finding of "extraordinary circumstances," none of which is present here. *See id.* at 522.

*First*, the claim of mere error in *Burlington* was purely one of law. *Id.* at 523. The district court had utterly failed to undertake "a proper factual determination." *Id.* at 534.[10] By

(...continued)
extraordinary remedy of mandamus is appropriate because the district court's order would otherwise destroy the confidentiality of the communications at issue."); *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 492 (7th Cir. 1970), *aff'd*, 400 U.S. 348 (1971) (stating that "because maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy, the extraordinary remedy of mandamus is appropriate").

[10] *Cf. Sealed Appellees v. Sealed Appellants,* 112 F.3d 173, 174 (5th Cir. 1997) (denying mandamus, holding that "[t]he preferable practice in factual patterns, such as here, is for the [district] court to examine a sufficient number of the contested documents to insure the informed protection of the privilege protecting the thought processes of an attorney. That examination can be conducted by the court or a special master or magistrate judge as the district court may choose. . . . [We therefore] stay the order of production pending further order of the district court. Our stay left, as it is, in the control of the district court is to allow the in
(continued...)

contrast, Occidental concedes that it is challenging not a conclusion of law, but merely the court's document review and resulting factual determination, and that the "abstract principle of law" at issue "is undisputed."

*Second*, the issues raised in the *Burlington* mandamus petition called for "an important and potentially far-reaching decision . . . appropriate . . . for our immediate review." *Id.* at 523. The challenged discovery went "to the heart of the controversy" between the parties and thus would "likely have a determinative impact on the course of the case." *Id.* at 522. Moreover, the legal issue resolved in *Burlington* was of significant precedential value, involving a question "which is likely to recur in future cases" and thus of "importance beyond the immediate lawsuit." *Id.* at 523. *See also In re American Airlines, Inc.*, 972 F.2d 605, 609 (5th Cir. 1992). Occidental, however, has made no showing that resolution of the instant controversy on mandamus review will have such an extraordinary impact, either within or beyond the confines of this dispute.

*Finally*, the order challenged in *Burlington* was of extraordinary size and scope, directing the production of several thousand documents. *See* 822 F.2d at 522. The instant order, by contrast, involves fewer than 200.

### III.

The district court ordered discovery on the ground that the documents relate to matters

---

(...continued)
camera examination of documents the district court may order."); *In re Oswalt,* 607 F.2d 645, 647 (5th Cir. 1979) (granting mandamus relief only after determining that "district court's factual findings were *clearly* erroneous.") (emphasis added).

triggering Occidental's fiduciary duty to the plaintiffs as plan administrator and thus fall within the fiduciary-duty exception to the attorney-client privilege.[11] Occidental takes exception, arguing that the district court found only that Occidental owed plaintiffs *some* fiduciary duties, without additionally determining that each requested document concerned the particular matters for which Occidental owed that duty.[12]

We deny mandamus relief, but on alternative grounds. *See Burlington,* 822 F.2d at 533. Irrespective of whether it owes plaintiffs a *fiduciary duty as plan administrator*, Occidental fails to show how the court would have erred had it ordered discovery on the ground that the ESOP, *as Occidental shareholder,* was entitled to pierce the corporation's attorney-client privilege under *Garner*, 430 F.2d at 1103-04. We therefore find no clear error.

Under *Garner,* a corporation may invoke only a limited attorney-client privilege against the discovery demands of a shareholder. After all, "management is not managing for itself,"

---

[11] *See Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 645 (5th Cir. 1992) (opining that "an ERISA fiduciary cannot assert the attorney-client privilege against a plan beneficiary about legal advice dealing with plan administration").

[12] *See, e.g., In re Long Island Lighting Co.*, 129 F.3d 268, 271 (2d Cir. 1997) ("[A]n employer acts as an ERISA fiduciary only in plan management or administration, not in the plan's design or amendment. The employer's ability to invoke the attorney-client privilege to resist disclosure sought by plan beneficiaries turns on whether or not the communication concerned a matter as to which the employer owed a fiduciary obligation to the beneficiaries.") (citations omitted).

but rather on behalf of the shareholder. *Id.* at 1101. We outlined the scope of this limited attorney-corporate client privilege as follows:

> The attorney-client privilege still has viability for the corporate client. The corporation is not barred from asserting it merely because those demanding information enjoy the status of stockholders. But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

*Id.* at 1103-04.

Occidental argues that *Garner* ought not apply, because the plaintiffs are not Occidental stockholders. The ESOP is an Occidental stockholder, however, and the plaintiffs are entitled to sue as plan beneficiaries on behalf of the plan under 29 U.S.C. § 1132(a).[13]

Occidental responds by noting that the plaintiffs brought this case as a class action, but does not explain why only an individual shareholderSSand not an entire class of shareholdersSSis entitled to recover.[14]

There is good cause for applying *Garner* here. As we have stated,

> There are many indicia that may contribute to a decision of presence or absence of good cause, among them [1] the number of shareholders and the percentage of stock they represent; [2] the bona fides of the shareholders; [3] the nature of the shareholders' claim and whether it is obviously colorable; [4] the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; [5] whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; [6] whether the communication related to past or to prospective actions;

---

[13] *See* 29 U.S.C. § 1132(a) ("A civil action may be brought . . . (2) . . . by a participant, beneficiary or fiduciary for appropriate relief under [29 U.S.C. § 1109]"); 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate"). *See also Tol-*
(continued...)

(...continued)
*son v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) ("Section 1132(a)(2) allows a beneficiary to bring a standard breach of fiduciary duty suit for the benefit of the subject plan."); *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 136, 140 (1985) (permitting § 1132(a)(2) suit by "a beneficiary under two employee benefit plans administered by petitioner . . . [and] funded from the general assets of petitioner").

[14] Recovery under 29 U.S.C. § 1109(a) and 29 U.S.C. § 1132(a)(2) is limited to that which "inures to the benefit of the plan as a whole." *Russell*, 473 U.S. at 140. Extracontractual compensatory or punitive damages are therefore not appropriate. *Id.* at 138.

5

[7] whether the communication is of advice concerning the litigation itself; [8] the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; [9] the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.

*Garner,* 430 F.2d at 1104.

As applied to this dispute, these factors collectively argue against recognizing the privilege. First, the ESOP holds Occidental preferred stock originally valued at $1.4 billion. Second, Occidental does not question the plaintiffs' good faith in initiating this action. Third, Occidental makes no claim that these actions are frivolous. Fourth, the plaintiffs present sufficient necessity for the requested documents. Fifth, the plaintiffs allege unlawful conduct tantamount to fraud. Sixth, the documents were created before the allegedly unlawful acts. Seventh, the documents were created before this litigation. Eighth, the plaintiffs have identified the particular documents for which they seek discovery. Ninth, Occidental claims no risk of trade secret or other proprietary interest.

It is true, of course, that the plaintiffs stand in adverse position to Occidental's common shareholders. Under *Garner*, a stockholder's demand for discovery "must be germane to his interest as stockholder, and the interests of the corporation and other shareholders may control to deny inspection." *Id.* at 1104 n.21. But opposing parties in litigation are inevitably and by definition adverse to one another. Indeed, in *Garner* "we specifically elected . . . to open up to shareholders . . . communications

between management and counsel where some pecuniary interests are necessarily adverse." *Ward v. Freeman*, 854 F.2d 780, 785 (5th Cir. 1988).

The concern expressed in *Garner* was with a shareholder's attempt to pierce the attorney-corporate client privilege to vindicate interests other than those of a shareholderSSfor example, a shareholder of two competing companies who seeks to pierce the privilege adversely to one company to benefit himself as a shareholder of the other. That concern is not triggered here. The plaintiffs' interest in the requested documents is limited to protecting their rights as (derivative) holders of Occidental preferred stockSSand nothing more. That is to say, the plaintiffs seek discovery only to uphold Occidental's fiduciary duties to the ESOP, and that discovery should in no way undermine Occidental's fiduciary duties to its common shareholders.

The petition for writ of mandamus is DENIED.