United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 12, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-50474

_____

In Re: AVANTEL, S.A.,

Petitioner.

--------------------
On
Petition for Writ of Mandamus to the United States District Court
for the Western District of Texas
SA 98-CA-849 WWJ
--------------------

Before JONES, DeMOSS, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This is a proceeding for mandamus in which it is asserted that the district court erred by

compelling production of documents ostensibly protected by the attorney-client privilege and the

Mexican professional secret doctrine. We decline to issue the writ of mandamus at this time, as

we are confident that the district court will reconsider its ruling in light of this opinion. Also

before this court are four pending motions obliquely related to the mandamus petition. These

motions are addressed in due course.

**I.**

Petitioner Avantel, S.A., is a Mexican corporation that provides telecommunications

1

services in Mexico. Teleplus, also a telecommunications company, is a Texas corporation. The present controversy stems from events beginning around April 1996, when Avantel and Teleplus entered into a written contract under which Teleplus agreed to perform marketing services on Avantel's behalf. Prior to 1997, individuals and businesses in Mexico were required to purchase their long-distance telephone services from Telefonos de Mexico. In early 1997, Mexico launched its so-called Equal Access campaign, which allowed Mexican residents and businesses to choose their long-distance carrier.

Teleplus alleges in the instant lawsuit that Avantel solicited it to enter into an oral agreement (which it claims was separate from the written contract) under which Teleplus promised to solicit Mexican residents to select Avantel as their long-distance carrier. Teleplus alleges further that this oral agreement was for a three-year term, and that it entitled Teleplus to an ongoing percentage of the long-distance payments from all the customers it convinced to choose Avantel as their carrier.

Throughout the Equal Access campaign, Avantel dealt with two of Teleplus's Mexican affiliates, not Teleplus itself. These affiliates are Servicios de Comunicaciones Mexicanos, S. de R.L. de C.V. ("SCM") and Comunicaciones del Sol, S.A. de C.V. ("CDS"). SCM and CDS are both Mexican corporations and maintain their principal places of business in Mexico. SCM and CDS claim that they assigned their claims against Avantel under the purported oral agreement to Teleplus. Such an assignment establishes diversity jurisdiction in this matter.

Teleplus filed this lawsuit in the Western District of Texas on September 19, 1998, against MCI Telecommunications Corp. (together with other MCI-related subsidiaries later added to the case, "the MCI defendants"), which owns part of Avantel. Avantel was added as a defendant in

2

December 2000. Teleplus dismissed its claims against the MCI defendants in July 2002, upon public disclosure of MCI's impending bankruptcy; thus, Teleplus's most recent complaint names only Avantel as a defendant. Teleplus currently seeks recovery under various theories, including breach of contract, promissory estoppel, negligent misrepresentation, quantum meruit, and fraud.

During discovery, Avantel withheld its ostensibly privileged documents from production, providing Teleplus with a log of those documents. In response, Teleplus filed a motion to compel production of the documents listed in the privilege log, asking the district court to conduct an *in camera* inspection of the documents. Avantel opposed that request on the ground that all of the listed documents were properly withheld from production during discovery, because they were protected by the attorney-client privilege under Texas law, the federal work-product doctrine, or the privileges established by the Mexican professional secret doctrine. Avantel provided the district court with a declaration from Roberto Rendon, a Mexican attorney, to help explain the scope of this Mexican legal doctrine. The district court then ordered that Avantel submit its privileged documents for an *in camera* inspection. After Avantel submitted these documents, the district court asked the parties to brief the choice-of-law issues surrounding application of the Mexican professional secret doctrine.

After considering the parties' arguments, the district court issued an order regarding Avantel's claims of the attorney-client privilege, the work-product doctrine, and the professional secret doctrine. *See Teleplus, Inc. v. Avantel, S.A.*, No. SA 98-CA-849 WWJ (W.D. Tex. April 9, 2003) (order) (hereinafter "Order"). The district court held that Avantel failed to prove that the Mexican professional secret doctrine conflicted with Texas law and, therefore, it chose not to conduct a choice-of-law analysis. Order at 2-4. The district court determined, furthermore, that

3

Rendon's testimony failed to prove the Mexican doctrine adequately and conclusively.  *Id.* at 3.

The district court then analyzed the attorney-client privilege under Texas law.  In March 1998, the district court noted, Texas abandoned its so-called control-group test used for determining the scope of the attorney-client for corporate clients and, in its place, adopted the more expansive subject-matter test.[1]  The district court, however, determined that the control-group test should apply to communications made prior to March 1998.

After reaching its conclusions, the district court determined that 46 of the documents in issue were not privileged, and it ordered Avantel to produce them to Teleplus.[2]  Avantel then petitioned this court for a writ of mandamus, asserting that the 46 documents are protected by the professional secret doctrine and that 29 of the documents are protected by the Texas attorney-client privilege.[3]  Avantel also filed a motion with this court for an emergency stay of the district

[1] The differences between the control-group and subject-matter tests are well-documented and uncontroversial.  *See, e.g.*, Graham C. Lilly, Evidence § 9.8, at  473-77 (3d ed. 1996).  The control-group test upholds the attorney-client privilege only if the individual speaking to the attorney "was vested by the corporation with authority both to seek legal advice and to participate significantly in the corporation's response to this advice."  *Id.* at 473.  The more broad subject-matter test protects not only communications between a corporation's control group and its attorneys, but also communications of employees made "at the direction of... superiors in the corporation" to the corporation's attorneys regarding the subject matter upon which the attorneys' advice is sought and concerning the duties of employment.  *Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193, 198 (Tex. 1993) (quoting *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 491-92 (7th Cir. 1970)).

[2] In this petition, Avantel claims that a total of 47 documents were ordered produced.  The district court's Order, however, compelled production of only 46 documents.

[3] The 46 documents that Avantel claims are protected by the professional secret doctrine are: 11, 12, 14, 15, 16, 68, 70, 71, 98, 99, 100, 101, 102, 103, 104, 105, 109, 110, 111, 112, 113, 114, 115, 116, 117, 119, 120, 121, 122, 123, 124, 125, 129, 130, 140, 141, 155, 162, 163, 164, 165, 166, 167, 168, 169, and 190.  The 29 documents that Avantel claims are protected by the attorney-client privilege are: 11, 12, 14, 15, 16, 68, 70, 71, 102, 111, 112, 113, 114, 115, 116, 117, 120, 121, 122, 123, 124, 125, 129, 130, 140, 141, 155, 169, and 190.

court's Order, which motion was granted.

When Avantel filed its petition for the writ of mandamus, including the necessary accompanying appendices, it failed to request that volume one of the appendix, which contained the putatively privileged documents, be filed under seal. Furthermore, Avantel served counsel for Teleplus with an unredacted copy of this volume. Avantel maintains that these disclosures were inadvertent and, accordingly, none of its claimed privileges have been compromised. For this reason, Avantel filed an emergency motion to place volume one of the appendix under seal and to order Teleplus to return all copies of the unredacted appendix. In addition to filing a response to Avantel's petition and to its emergency motion, Teleplus also filed a motion to dismiss the petition on grounds that Avantel's failure to file its documents under seal and its serving Teleplus with the ostensibly privileged documents constituted a waiver of any privilege and, therefore, rendered moot Avantel's petition.[4] Also pending before this court is Teleplus's motion for leave to file a sur-response to Avantel's motion to place volume one of the appendix under seal.

To summarize, then, the following petitions and motions are before this court:

(i)     Avantel's petition for the writ of mandamus;

(ii)    Avantel's motion to place volume one of the appendix under seal;

(iii)   Avantel's motion to order Teleplus to return all copies of any produced privileged documents, specifically, volume one of appendix;

(iv)    Teleplus's motion to dismiss Avantel's petition for the writ of mandamus; and

---

[4] While Avantel's motion to place volume one of the appendix under seal is pending, the Clerk, in accordance with established policy, has made this volume unavailable to the public. Furthermore, Teleplus has represented that it will refrain from using the material in issue in the appendix until a court determination is made regarding whether a privilege attaches to it.

(v)     Teleplus's motion for leave to file a sur-response to Avantel's motion to place volume one of the appendix under seal.

## II.

At the heart of this matter lies Avantel's petition for the writ of mandamus. As such, that is where our analysis begins. Specifically, Avantel's petition seeks a determination compelling the district court to vacate its Order requiring Avantel to produce to Teleplus the ostensibly privileged documents in issue. The All Writs Act, 28 U.S.C. § 1651, and Rule 21, Fed. R. App. R., permit this court to issue the writ of mandamus should the circumstances warrant it.

Our standard for issuing the writ of mandamus has been addressed often and thoroughly, most notably in *In re Occidental Petroleum Corp.*, 217 F.3d 293, 295 (5th Cir. 2000). Mandamus is an appropriate remedy "when the trial court has exceeded its jurisdiction or has declined to exercise it, or when the trial court has so clearly and indisputably abused its discretion as to compel prompt intervention by the appellate court." *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992) (internal citations and quotation marks omitted). Merely showing that the district court erred is insufficient to obtain mandamus relief. *Occidental*, 217 F.3d at 295 (citing *In re United States*, 878 F.2d 153, 158 (5th Cir. 1989) (noting that "generally discovery and similar pretrial orders, even erroneous ones, are not reviewable on mandamus")). Rather, "[m]andamus is an extraordinary remedy reserved for extraordinary cases," one granted "not as a matter of right, but in the exercise of a sound judicial discretion." *Southern Pac. Transp. Co. v. City of San Antonio*, 748 F.2d 266, 270 (5th Cir. 1984). A mere showing of error, after all, may be corrected on appeal: "[I]t is more than well-settled that a writ of mandamus is not to be used as a substitute for appeal." *In re American Marine Holding Co.*, 14 F.3d 276, 277 (5th Cir.

6

1994). Thus, for Avantel to establish entitlement to mandamus relief, it must show not only that the district court erred, but that it clearly and indisputably erred. *See Occidental*, 217 F.3d at 295. Moreover, Avantel must show that the "clear and indisputable" error is irremediable on ordinary appeal, thereby justifying the emergency relief of mandamus. *See id.*

Yet, it is established that mandamus is an appropriate means of relief if a district court errs in ordering the discovery of privileged documents, as such an order would not be reviewable on appeal. *Occidental*, 217 F.3d at 295.[5] Furthermore, a petitioner seeking mandamus "must show that [it] lacks[s] adequate alternative means to obtain the relief [it] seek[s]. *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992) (internal citations and quotation marks omitted). If Avantel is compelled to produce documents protected by a privilege, that privilege will be lost and the district court's order will then be effectively unreviewable after final judgment. Thus, if it can be shown that the district court erred in ordering the production of documents and in its analysis of the privilege, mandamus would be the appropriate remedy. Keeping in mind this circuit's standards for granting the writ of mandamus, we turn now to Avantel's contentions that the Texas law of attorney-client privilege should preclude production of 29 documents and that

---

[5] *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed. Cir. 2000) (observing that "mandamus is appropriate 'because maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy.'") (quoting *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1387 (Fed. Cir. 1996)); *In re General Motors Corp.*, 153 F.3d 714, 715 (8th Cir. 1998) ("The extraordinary remedy of mandamus is appropriate because the district court's order would otherwise destroy the confidentiality of the communications at issue."); *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 492 (7th Cir. 1970), *aff'd*, 400 U.S. 348 (1971) (stating that "because maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy, the extraordinary remedy of mandamus is appropriate").

the Mexican professional secret doctrine should prevent production of all 46 documents in issue.

## III.

### *A. Attorney-Client Privilege*

Avantel claims that 29 of the documents ordered produced are protected by the attorney-client privilege. Review of a district court's determination with respect to the attorney-client privilege, even on direct appeal, let alone via a mandamus petition, is limited. Indeed, it is established that "[t]he application of the attorney-client privilege is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents." *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994) (internal quotations omitted), *cert. denied*, 513 U.S. 1179 (1995). And, "[t]he clearly erroneous standard of review applies to the district court's factual findings." *Id.* Still, "[w]e review the application of the controlling law de novo." *Id.* Thus, the issue whether the district court should have applied the control-group test or the subject-matter test is reviewed de novo.

The controversy regarding the attorney-client privilege arises from that the fact that in March 1998, Texas altered the scope of the privilege for corporate entities.[6] Prior to this date, Texas employed a control-group test in which the only communications warranting the protections of the attorney-client privilege were those between the so-called control group or management group of a corporation and the corporation's attorneys. *In re Monsanto Co.*, 998

---

[6] It is not disputed by the parties that the Texas law of attorney-client privilege governs the instant matter. Indeed, Rule 501, Fed. R. Evid., provides that in cases where state law supplies the rule of the decision, such as this diversity-jurisdiction matter, the "privilege of a witness, person, government, State, or political sub-division thereof shall be determined in accordance with State law." Rule 501, Fed. R. Evid. Accordingly, Texas privilege law applies here.

S.W.2d 917, 922 (Tex. App. 1999). In 1998, Texas abandoned the control-group test for the more expansive subject-matter test, as codified in Rule 503, Tex. R. Evid. This test protects a broader range of communications, including those made by individuals outside the corporation's control group. *Id.* The Texas Rules of Evidence explicitly provided that the subject-matter test is "effective March 1, 1998." Rule 503, Tex. R. Evid.

As this suit was brought *after* March 1, 1998, Avantel argues that *all* of the communications should be governed by the more expansive subject-matter test. In contrast, Teleplus argues that communications made before March 1998 should be evaluated under the old control-group test. The district court agreed with Teleplus, finding that all pre-March 1998 communications should be evaluated in accordance with the control-group test. Order at 4-5. In reaching its conclusion, however, the district court cited to an order of the Texas Supreme Court requiring that "application of the new rules to pending cases... 'must be without prejudice to any person on account of the transition from the prior rules.'" *Id.* at 5 (citing *In re Team Transport, Inc.*, 996 S.W.2d 256, 259-60 (Tex. App. 1999)). This particular order, however, applied only to the Texas Rules of Civil Procedure, not to the Texas Rules of Evidence, which, as noted *supra*, is the body of law indicating that Texas had adopted a subject-matter test. *See Team Transport*, 996 S.W.2d at 259-60. In attempting to apply the Texas Supreme Court's instructions, the district court then determined that imposing the new subject-matter test upon communications made before March 1998 would prejudice Teleplus, which, the district court reasoned, had somehow relied on the old control-group test until March 1998. Order at 5. Thus, the district court held that the control-group test applied to the 29 communications in issue with regard to the attorney-client privilege and ordered that these communications be produced.

9

We agree with Avantel's contention that the district court's decision to apply the control-group test to the 29 communications was erroneous. As an initial matter, the district court should not have relied on an order from the Texas Supreme Court that concerned the Texas Rules of Civil Procedure, not the Rules of Evidence or, specifically, the attorney-client privilege. *See Team Transport*, 996 S.W.2d at 259-60.[7] Thus, if the production of the documents in issue is to be governed by the control-group test, it must be for a reason other than that cited by the district court. However, we can find no valid reason to apply the control-group test to the communications at issue. Rather, we note that Rule 503, Tex. R. Evid., which establishes the subject-matter test, expressly provides that it shall become effective on March 1, 1998. This provision, in conjunction with the order approving the revisions to the Texas Rules of Evidence, leads to the inescapable conclusion that the subject-matter test applies to the 29 communications in issue. That order stated that the amended rules, such as the new Rule 503, take effect March 1, 1998 and "apply to all proceedings on or after that date." *See Musgrove v. State*, 82 S.W.3d 34, 39 (Tex. App. 2002) (citing Court Order on Final Approval of Revisions to the Texas Rules of Evidence, printed in 61 Tex. Bar J. 373 (Apr. 1998)). As the instant case was brought after March 1998, *each and every proceeding* in this matter occurred after the adoption of the subject-matter test.

Moreover, although Texas law prohibits retroactive application of procedural rules[8] when

---

[7] Teleplus appears to have conceded this part of the argument, as it never argues that the district court should have applied the order to which it cited.

[8] Under Texas law, "[t]he rules of evidence are procedural provisions." *Musgrove*, 82 S.W.3d at 39 (citing *Buffington v. State*, 801 S.W.2d 151, 154 (Tex. App. 2000)). *See also In re NationsBank, N.A.*, 2000 WL 799807, *5 n.11 (Tex. App. 2000); *Freeman v. State*, 786 S.W.2d 56, 57-58 (Tex. App. 1990).

a vested right is harmed, *Musgrove*, 82 S.W.3d at 39, it has been established that a party that seeks discovery of the opposing party's ostensibly privileged documents does not have a vested right to access those documents. *In re NationsBank, N.A.*, 2000 WL 799807, *5 n.11 (Tex. App. 2000). Given that one party has no vested right in the privilege status *vel non* of another party's communications, it follows that Teleplus could not and should not have relied on the control-group test as governing Avantel's communications. Accordingly, applying the subject-matter test to Avantel's pre-March 1998 communications does not prejudice Teleplus. As such, even if the district court *had* been correct to apply the Texas Supreme Court order on which it relied to its attorney-client privilege analysis, it nevertheless should have concluded to use the subject-matter test, because applying that test would not have prejudiced Teleplus. Furthermore, it has been squarely held that communications made prior to the adoption of the subject-matter test are to be governed by the subject-matter test when they concern post-March 1998 proceedings. *Id.*

Thus, the district court should have applied the subject-matter test to all communications in this litigation, including those occurring before March 1, 1998. While Teleplus questions the fairness of this conclusion, we are not unmindful that the Texas Supreme Court, if it had desired as much, could have specified that the subject-matter test apply only to communications after a certain date, rather than proceedings after a certain date.[9] The district court therefore erred by

_____

[9] Teleplus argues that the attorney-client privilege should be applied based upon the parties' expectations and that, therefore, it would be inappropriate to apply the broader subject-matter test to communications occurring prior to March 1, 1998. Teleplus asserts that because the parties (specifically Avantel) assumed that the control group test applied prior to March 1, 1998, it should not receive the windfall of having additional communications be privileged. This argument is flawed for a number of reasons. First, it runs counter to explicit language requiring that the subject-matter test apply to all proceedings after March 1, 1998. Second, Teleplus could not have had "expectations" about Avantel's communications prior to March 1, 1998. As noted, this litigation began after March 1998, so Teleplus cannot reasonably now argue that it was

11

applying the control-group test to the 29 documents in issue.

In addition to its claim that the district court rightly applied the control-group test to the 29 documents in issue here, Teleplus argues that 26 of these 29 documents were ordered to be produced on a basis wholly-independent from whether the control-group or subject-matter test governs. Specifically, Teleplus notes that the district court's order holds that the 29 documents

> are not protected by the attorney/client privilege, either because a recipient or sender was not within Defendant's "control group" or because an attorney was merely sent a copy of the communication or was merely one of many recipients of the communication.

Order at 8. Teleplus contends that Avantel's privilege log reveals that 26 of the 29 documents fall into the latter category and therefore would not be protected under either test.[10] Specifically, Teleplus examines the privilege log and argues that because 26 of the documents (all of which were emails) were carbon-copied ("cc'ed") to Avantel's counsel (rather than being a direct communication to or from an attorney), then the district court based its determination that the privilege does not attach on the fact that an attorney was merely one of many recipients. And, because Avantel does not here dispute any determination by the district court regarding this category, Teleplus argues, only three documents are in issue with respect to the attorney-client privilege.

---

somehow relying on the control-group test when the matter had yet to be brought. Perhaps Avantel has received a windfall due to the rule change, but there is no reason that this supposed windfall should trump a clear order of the Texas Supreme Court.

[10] Teleplus argues that items 11, 12, 14, 70, 71, 102, 111, 112, 113, 114, 115, 116, 117, 120, 121, 122, 123, 124, 125, 129, 130, 140, 141, 155, 169, and 190 were ordered produced for reasons not dependent upon which privilege test was used.

This argument is flawed for several reasons. First, the district court noted that the 29 documents here in issue are not privileged for one *or more* of the justifications it provides; it does not specifically state which justification or justifications were used to order production of each communication. Order at 8. Second, and more importantly, Teleplus's assertion that 26 of the documents are not privileged regardless of which test is used is not necessarily accurate. Given that the district court applied the incorrect test—it employed the control-group test instead of the subject-matter test—the district court needs to reconsider all 29 documents in light of the appropriate standard—*i.e.*, it needs to be established whether these communications qualify as subject-matter communications. To be sure, many of the 29 documents were merely cc'ed to an attorney. Although such a process itself is clearly insufficient to establish the privilege,[11] these documents may be within the auspices of the subject-matter test despite that they were cc'ed to an attorney. Put differently, while it is not disputed that 26 of the documents were cc'ed to attorneys, this fact does not disqualify it for the privilege under the subject-matter test. For instance, Texas law permits that communications "between representatives of the client or between the client and a representative of the client..." are privileged. Rule 503(b)(1)(D), Tex. R.

---

[11] Indeed, the district court noted that

[t]his Court is of the opinion that e-mails sent to or from attorneys acting in a non-legal capacity, e.g., as CEO, CFO, etc., and that are not addressed to or sent by Defendant's in-house or outside legal counsel should not be privileged since they are not made for the purpose of facilitating the rendition of professional legal services. Moreover, e-mails in which in-house or outside attorneys are merely sent copies of the text of the e-mail, or in which they are merely one of many addresses, should not be privileged, unless the e-mail is directed to the attorney or sent by the attorney.... To rule otherwise would allow parties to evade the privilege limitations by sending copies of every company-generated e-mail to the company's attorney so as to protect the communication from discovery, regardless of whether legal services were sought or who the other recipients of the e-mail were.

Order at 7.

Evid. The Texas Rules of Evidence defined a "representative of client" as:

> (A) a person having authority to obtain professional legal services, or to act on advice thereby rendered, on behalf of the client, or
> (B) any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client.

Rule 503(a)(2)(A)-(B), Tex. R. Evid. Given this inclusive standard, many of the communications in issue may fall within the protections of the subject-matter test.

Thus, the district court must consider which of the 29 documents are protected by the subject-matter test, as articulated in Rule 503, Tex. R. Evid. Given that the subject-matter test applies—and the contours of that test are different than those of the control-group test—it is necessary for the district court to re-examine all 29 documents in light of this test.[12]

### B. Professional Secret Doctrine

Avantel claims that the 46 communications that were the subject of the district court's Order should be excluded from production because of the Mexican professional secret doctrine, which Avantel argues, the district court erred in refusing to apply. The district court, however, held that it was not proper to apply the Mexican doctrine because Avantel failed to carry its burden to prove the nature and scope of such a body of law. Order at 2-4. As the party moving

---

[12] Teleplus's final argument on this topic—that Avantel's disclosure of the ostensibly privileged documents vitiates any claim of the attorney-client privilege—presents the same arguments as Teleplus's motion to dismiss, discussed *infra*. As we note there, it has yet to determined whether Avantel's disclosures to this court and to Teleplus were inadvertent and, thus, whether they compromise the privilege. As such, Avantel's disclosure of the purportedly privileged documents cannot be used as a basis for denying its petition for the writ of mandamus at this time.

14

to apply Mexican privilege law, Avantel had the burden of proving its substance to a reasonable certainty such that the district court could apply it to the documents at issue. Absent such proof, the district court should apply the law of the forum. *Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1006 (5th Cir. 1990). In determining whether a party has adequately proved the substance of foreign law, the district court is given wide latitude: in *Seguros Tepeyac, S. A., Compania Mexicana de Seguros Generales v. Bostrom*, 347 F.2d 168, 174-75 n.3 (5th Cir. 1965), we noted that it is generally agreed that "the law of the forum should apply when foreign law is not proved." And, "[i]n the interest of arriving at a just adjudication, the trial judge should have discretion in determining whether the law of the forum... should prevail." *Id.* Furthermore, the extraordinary nature of the remedy of mandamus[13] counsels strongly against disrupting the district court's decision determining that the professional secret doctrine was not adequately established.

In its Order, the district court noted Avantel's assertion that Mexican professional secret law is much more protective of communications than Texas privilege law. Order at 2-3. Indeed, the analysis of the doctrine found in Avantel's briefs describes a concept more protective than that of Texas. Yet, the entirety of Avantel's proof that such a protective doctrine exists in Mexico consisted only of a declaration by a Mexican attorney, Roberto Rendon, describing his interpretation of Mexican privilege law. Thus, the district court determined that the declaration provided no verifiable information from which to infer whether this doctrine is any more protective than Texas privilege law. Thus, the district court refused to apply to the doctrine, holding that Avantel had not adequately proven it. Hence, the district court determined, Avantel

---

[13] *See, e.g., Dresser*, 972 F.2d at 543.

15

failed to establish with sufficient proof the substance of Mexico's professional secret doctrine and how it differs from Texas privilege law. Therefore, the district court applied Texas law, citing the well-settled principle that "when the parties have failed to conclusively establish foreign law, a court is entitled to look to its own forum's law." *Banco de Credito Indus., S.A. v. Tesoreria General*, 990 F.2d 827, 836 (5th Cir. 1993) (citing *Cantieri Navali Riuniti v. M/V Skyptron*, 802 F.2d 160 (5th Cir. 1986) and *Symonette Shipyards Ltd. v. Clark*, 365 F.2d 464, 468 (5th Cir. 1966)).

We find no error in the district court's analysis. Indeed, while Rendon cited numerous Mexican codes to explain the professional secret doctrine, we agree with the district court's conclusion that he failed to address whether the documents in issue would be protected by the privilege, and never explains if or how the privilege applies to in-house counsel or to documents found in the possession of the client, such as e-mails in which an in-house attorney may only have received copies. Furthermore, the referenced foreign codes only address the rights of the lawyer—not those of the client—not to divulge certain information. Finally, the applicable codes to which Rendon refers in his declaration do not describe a doctrine either more or less protective than the privilege law in existence in Texas, but merely refer to a general privilege similar to that found in Texas.

Thus, given the broad discretion of the district court to determine whether foreign law conflicts with domestic law, the extraordinary nature of the mandamus remedy, and the fact that the district court was correct in determining that Avantel did not meet its burden, we hold that Avantel's arguments regarding the professional secret doctrine do not prevail in this mandamus petition. Accordingly, the district court's decision not to apply the professional secret doctrine

16

was not erroneous and certainly not an abuse of discretion.

*C.  Pending Motions*

After considering Avantel's petition for the writ of mandamus, and determining that the district court erred by applying the control-group test to the 29 documents in issue with respect to the attorney-client privilege, we turn now to the other issues before this court.  First, Teleplus has filed a motion to dismiss Avantel's petition as moot, arguing that Avantel has waived the attorney-client privilege by (i) filing the ostensibly privileged documents publicly with this court and (ii) sending copies of the documents to Teleplus's counsel.  Avantel argues that because these disclosures were inadvertent, there has been no waiver of the privilege.  As these documents are still privileged, Avantel argues, the petition is not moot because a court could still provide Avantel with the relief it seeks, namely, by ruling not to admit these documents into evidence at trial.

We begin the analysis of this issue by considering Rule 501, Fed. R. Evid., the provision that governs privilege in the federal courts.  Rule 501, Fed. R. Evid., provides that in cases where state law supplies the rule of the decision, such as this diversity-jurisdiction matter, "the privilege of a witness, person, government, State, or political sub-division thereof shall be determined in accordance with State law."  Rule 501, Fed. R. Evid.  Accordingly, the Texas law of privilege controls.  Because we invoke Texas privilege law in this diversity matter, we also employ Texas law regarding waiver of that privilege.  *See Hyde Const. Co. v. Koehring Co.*, 455 F.2d 337, 340-42 (5th Cir. 1972) (considering, in a diversity case, whether Mississippi law—not federal law—would determine that the attorney-client privilege had been waived); *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731 (8th Cir. 2002) ("Nebraska law controls the issue of waiver of

17

attorney-client privilege in this [diversity] case."); *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998) (making a similar determination as *Pamida*); *F.D.I.C. v. Fidelity & Deposit Co. of Maryland*, 196 F.R.D. 375, 380 (S.D. Cal. 2000) (holding that state attorney-client privilege law applied to resolve whether the inadvertent disclosure of documents during discovery operated as a waiver because state law governed the substantive issues of the case). *Cf. Alldread v. City of Granada*, 988 F.2d 1425, 1433 (5th Cir. 1993) (holding that because federal law—not state law—supplied the rule of the decision, it was appropriate to apply federal privilege law, and, therefore, federal privilege waiver law).

Texas law clearly protects inadvertent publishing of confidential documents. *See* Rule 193.3(d), Tex. R. Civ. Proc.; *In re the Lincoln Electric Co.*, 91 S.W.3d 432, 437-37 (Tex. App. 2002); *In re Carbo Ceramics, Inc., Realtor*, 81 S.W.3d 369, 376 (Tex. App. 2002); *In re Monsanto Co.*, 998 S.W.2d 917 (Tex. App. 1999). Because of the protections afforded under Texas law, Avantel's petition is not moot. Mootness is not a concept based on the privilege itself. Rather, federal courts deem a case moot "only when it can be shown that a court cannot even 'theoretically grant' relief." *Vieux Carre Property Owners, Residents & Assocs., Inc. v. Brown*, 948 F.2d 1436, 1446 (5th Cir. 1991) (citing *Richland Park Homeowners Ass'n v. Pierce*, 671 F.2d 935, 943 (5th Cir. 1982)). Thus, "[t]he question is whether there can be *any* effective relief." *Vieux Carre*, 948 F.2d at 1446 (quoting *Northwest Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988)) (emphasis in original). It is quite obvious that, if it were determined that Avantel's disclosures were inadvertent, it still could obtain meaningful relief, specifically, a holding that such documents would be inadmissible at trial. *See United States ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 184 (C.D. Cal. 2001) (The "bell has already been rung"

18

argument "rests on an unduly narrow conception of the interests protected by the privilege" because the privilege "protects against both disclosure *and use*" and "[p]reventing the latter is sufficient to promote at least one of the purposes of the privilege."). *See also Myers v. City of Highland Village, Texas*, 212 F.R.D. 324, 328 (E.D. Tex. 2003).[14]

We make no determination here whether Avantel's disclosure was inadvertent. Indeed, such an undertaking may be unnecessary, pending the district court's application of the subject-matter test to the documents in issue here. Furthermore, it is for the district court to decide this issue, using the applicable Texas law. Accordingly, we deny Teleplus's motion to dismiss Avantel's petition, without prejudice to Teleplus's option, should it desire, to argue before the district court that Avantel's disclosures of the purportedly privileged information were not inadvertent.

Second, we grant Avantel's motion to place volume one of the appendix under seal and to order Teleplus to return all copies of volume one of the appendix, pending the district court's

_____

[14] Any reliance by Teleplus on *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 94 F.3d 110, 111 (3d Cir. 1996), is misplaced, as that case is (i) clearly distinguishable and (ii) not controlling. In *Orthopedic Bone Screw*, two parties filed a motion in the district court for an injunction preventing the plaintiffs from filing public comments containing data claimed to be privileged under the Illinois Medical Studies Act. *Id.* at 110. After the district court denied the motion, the moving parties both filed an appeal and petitioned for a writ of mandamus, raising the sole issue whether the plaintiffs should be enjoined from filing the data publicly with the FDA. Because the plaintiffs filed the comments containing the data before the case was heard, the court dismissed the appeal and petition as moot. *Id.* As the only issue presented in the case was whether the plaintiffs should be enjoined from performing an action, namely filing comments with the FDA, once that action had been executed, there was no meaningful relief the court could grant. *Id.* Importantly, the court did *not* hold that public disclosure of the data rendered the privilege claim moot; to the contrary, the court expressly provided guidance to the district court on the privilege issue because of the distinct possibility that the parties might "raise claims of privilege again." *Id.* at 111. In the instant case, as noted above, there is still meaningful relief that a court may grant, namely, determining that the allegedly privileged documents are inadmissable at trial.

application of the subject-matter test to the documents in issue in this litigation.[15]  Finally, we deny Teleplus's motion for leave to file a sur-response to Avantel's motion to place volume one of the appendix under seal.

## IV.

Fifth Circuit precedent instructs that mandamus need not issue when a panel is confident that the district court will reconsider its determination in light of the appropriate legal standard.[16] As such, we invite the district court to consider anew its decision to apply the control-group test to the 29 communications in issue,[17] given our determination that the subject-matter test should apply to these communications.  Accordingly, mandamus will not issue at this time, as we believe that the district court will comply with the determinations in this opinion.

---

[15] Any document not deemed privileged, of course, would be subject to production.

[16] *See, e.g., United States v. Anderson*, 70 F.3d 353, 354 (5th Cir. 1995); *Matter of Green*, 39 F.3d 582, 584 (5th Cir. 1994).

[17] The documents the district court should reconsider are 11, 12, 14, 15, 16, 68, 70, 71, 102, 111, 112, 113, 114, 115, 116, 117, 120, 121, 122, 123, 124, 125, 129, 130, 140, 141, 155, 169, and 190.